Allon R. HAHN, Individually and d/b/a
Hahn's Gulf Service, Appellant,

v.

Bertrand R. LOVE, Appellee.

No. 01–07–00096–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 26, 2009.

Rehearing Overruled Dec. 12, 2009,

J. Richard Hall, Ross, Banks, May, Caron & Cabin, P.C., Houston, TX, for Appellant.

Charles E. Fitch, Law Office of Charles E. Fitch, P.C., Samuel Lee Milledge, The Milledge Law Firm, P.C., Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and HIGLEY.

## OPINION

EVELYN V. KEYES, Justice.

We withdraw our November 6, 2008 opinion and judgment and issue the following in its stead. *See* TEX.R.APP. P. 50.

Appellee Bertrand R. Love, the purchaser of a property located in Harris County, Texas, intervened in a lawsuit between appellant, Allon R. Hahn, individually and d/b/a Hahn's Gulf Service (collectively, "Hahn"), and Mid–Town Roofing and Construction, Inc. ("Mid–Town"), seeking to enjoin Hahn from carrying out an execution sale on the property to satisfy a judgment lien against a third-party, O'Neal Session, and to remove Hahn's claims as a cloud on the title. The trial court granted Love's motion for summary judgment, removing Hahn's claims as a cloud on Love's title and dismissing Hahn's counter-claims for fraudulent transfer and constructive trust against Love. Hahn appeals, contending in five issues that (1) a general warranty deed transferring the property from Session to Mid–Town, dated April 2002, after the expiration of Hahn's judgment lien, and recorded January 2004, two days prior to revival of the judgment, is void as a matter of law because the description of the land is legally inadequate; (2) Hahn's second abstract of judgment, filed in March 2004, after his revival of the judgment, attached to the property because no prior valid deed transferred the property from Session; (3) genuine issues of material fact exist as to whether Session fraudulently conveyed the property to Mid–Town and as to Love's good faith and notice of the alleged fraudulent transfer when he purchased the property in April 2004, hence as to Love's entitlement to summary judgment on Hahn's fraudulent transfer claims against him and on Love's suit to remove the cloud from his title; (4) a legal basis for a constructive trust exists against Love; and (5) the trial court erred in permitting Love to file his motion for summary judgment after the deadline in the docket control order had passed.

We reverse and remand.

## Background

On October 20, 1988, Hahn won a judgment against O'Neal Session, C.J. Foreman, and Roofs by C.J., jointly and severally, for $77,136.05 plus interest. On April

16, 1992, Hahn filed an abstract of judgment, but the defendants in the 1988 judgment had no assets to seize at that time. Then, in August 2001, the property that is the subject of this suit was conveyed to O'Neal Session.[1] Hahn's judgment lien automatically attached to the property by virtue of a properly recorded and indexed abstract of judgment.[2] Hahn's judgment lien expired on April 16, 2002, however, and his judgment against Session, Foreman, and Roofs by C.J. became dormant.[3]

On April 26, 2002, ten days after Hahn's judgment lien expired, Session purportedly conveyed the property to Mid–Town, an entity that Hahn contends is owned and operated by members of Session's immediate family, specifically Pamela Session and Toshoner Session Egans. This transfer was not recorded until January 2004.

In August 2003, *after* the purported execution of the 2002 deed conveying the property to Mid–Town, O'Neal Session and his wife Myria entered into a contract to sell the property to Walter Strickland for $350,000. Real estate broker Herman Gary was involved in this deal on behalf of Strickland, the purchaser. The deal to sell the property to Strickland fell through on December 2, 2003, when Fidelity National Title Company sent the title commitment to Session and Strickland and requested payoff of Hahn's judgment lien and the Sessions refused to pay the amount of the judgment lien from the proceeds.

On December 10, 2003, Hahn filed a motion to revive his judgment against Session and sent notice of the hearing to the Sessions.

On January 7, the Sessions and Strickland signed another earnest money contract to convey the property to Strickland for $450,000 and delivered the contract to American Title for closing. This time, Gary acted as broker on behalf of the Sessions.

On January 21, 2004, a General Warranty Deed reflecting the conveyance of the property from Session to Mid–Town on April 26, 2002 was recorded (the "2002 deed"). That deed lacked a metes and bounds description of the property.

Two days later, on January 23, 2004, following a hearing, Hahn obtained an order for the revival of his 1988 judgment against O'Neal Session, C.J. Foreman, and Roofs by C.J.[4] Hahn's lawyer testified by affidavit:

> I filed the motion to revive the judgment and served scire facias on Mr. O'Neal Session by Certified Mail, Return Receipt Requested.... On the date of the hearing before Judge Ken Wise, Mr. Session, Pamela Session, and [her lawyer] appeared and asked the Judge for more time to respond to the motion.

---

1. The property consists of two lots in the City of Houston in Harris County, Texas, located at 1615 and 1621 Wheeler Street ("the property").

2. *See* TEX. PROP.CODE ANN. §§ 52.001–.004 (Vernon 2007 & Supp.2008); *Wilson v. Dvorak*, 228 S.W.3d 228, 233–34 (Tex.App.-San Antonio 2007, no pet.) (outlining process for creating judgment lien and stating, "When properly recorded and indexed, an abstract of judgment creates a judgment lien that is superior to the rights of subsequent purchasers and lien holders.").

3. *See* TEX. PROP.CODE ANN. § 52.006 (Vernon Supp.2008) (governing length of time judgment lien is valid); TEX CIV. PRAC. & REM.CODE ANN. § 34.001 (Vernon 2008) (governing length of time judgment is active and providing for renewal of judgment with writ of execution issued within ten years of previous writ).

4. *See* TEX. CIV PRAC. & REM.CODE ANN. § 34.006 (Vernon 1997) ("A dormant judgment may be revived by scire facias or by an action of debt brought not later than the second anniversary of the date that the judgment becomes dormant.").

They did not announce that two days before they [had] recorded a deed of the subject property from the Sessions to Mid–Town dated almost two years earlier.

On March 1, 2004, Hahn filed for record a second abstract of judgment, again listing O'Neal Session, C.J. Foreman, and Roofs by C.J. as the judgment debtors and creating a judgment lien against their real property.

On March 3, 2004, two days after Hahn refiled his abstract of judgment against O'Neal Session, Session executed a correction deed to clarify the April 26, 2002 conveyance of the property from himself to Mid–Town, which was filed on March 15, 2004. The correction deed added a metes and bounds description of the property.

In support of his motion for summary judgment, Love testified by affidavit that "shortly before April 14, 2004" he received a telephone call from Gary, the real estate broker who had initially represented Strickland and then the Sessions in the two attempted 2003 sales of the property by the Sessions to Strickland. Gary indicated that the property was available for purchase and that Love "would have to act relatively fast because the initial purchaser under a contract could not qualify to close and the contract was about to expire." Love further testified by affidavit that, "[a]ccording to Mr. Gary, if [the contract expired] then the property would go back on the market." Love testified by affidavit that, based on the success of his past dealings with Gary, he was interested in the investment opportunity and that he proceeded to purchase the property. Love sent a cashier's check for $448,587.13 to American Title Company, and Gary took the necessary closing documents for Love to sign in New Orleans, Louisiana.

A few days later, on April 14, 2004, the transaction closed, and Mid–Town executed a deed that conveyed the property to Love. This deed was recorded on April 16, 2004.

In August 2004, Hahn attempted to proceed with an execution sale of the property to satisfy his judgment against Session. Mid–Town sued Hahn, seeking a temporary restraining order and a temporary and permanent injunction prohibiting the execution sale of the property. Love intervened in the suit, seeking an injunction prohibiting the sale of the property and seeking to remove the cloud from his title.

Hahn filed counter-claims against Mid–Town and Love and a third-party action against Session, his wife Myria Mae Session, and other members of the Session family, Pamela Session and Toshoner Session Egans, seeking a declaratory judgment that he had a valid lien against the property. Specifically, Hahn asked for a judgment declaring (1) that the conveyances of the property from Session to Mid–Town and from Mid–Town to Love were both void as fraudulent conveyances under Chapter 24 of the Texas Business and Commerce Code; (2) that the March 1, 2004 judgment lien attached to the property because the 2002 deed was void for lack of a sufficient legal description at the time the second abstract of judgment was filed for record; and (3) that the April 14, 2004, conveyance of the property from Mid–Town to Love was subject to Hahn's judgment lien and to the imposition of a constructive trust because Love was not a bona fide purchaser for value, in good faith, and without notice of Hahn's interest in the property. Hahn also sought an execution sale to satisfy the judgment lien and a money judgment for assets that had been fraudulently transferred.

On July 11, 2005, Love filed a motion for summary judgment, which he supplemented on May 12, 2006. On June 2, 2006, Love filed an amended motion for summary judgment, requesting that the trial

court remove Hahn's claims as a cloud on Love's title to the property and that Hahn take nothing against him. Love contended that "no judgment lien existed that attached to the Property at the time Love acquired it" or thereafter. Rather, he contended that he took the property by a general warranty deed from Mid–Town, which had taken the property in 2002 by a valid general warranty deed unencumbered by Hahn's judgment lien, which had expired, and, therefore, the cloud on his title should be removed and he should be dismissed from the suit. Love also claimed that he was entitled as a matter of law to summary judgment on Hahn's fraudulent transfer claims and to removal of the cloud from his title because he was a bona fide purchaser of the property for value, in good faith, and without notice under section 24.009(a) of the Texas Business and Commerce Code[5] and under section 13.001 of the Property Code.[6] Therefore, Hahn was entitled to take nothing from him with respect to those claims.

Love's motion for summary judgment was filed as both a traditional and no-evidence motion for summary judgment. The trial court granted Love's motion for summary judgment on July 6, 2006. On January 12, 2007, the trial court severed the claims between Hahn and Love from the rest of the case, making the summary judgment in Love's favor final and appealable. This appeal of the trial court's July 2006 court order granting Love's motion for summary judgment followed.

### Standard of Review

We review de novo the trial court's grant of summary judgment. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). We must make inferences, resolve doubts, and view the evidence in the light most favorable to the non-movant. *Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999). Love's motion for summary judgment contained both traditional and no-evidence grounds for summary judgment. *See* Tex.R. Civ. P. 166a(c), (i).

■ A traditional summary judgment under Rule of Civil Procedure 166a(c) is properly granted only when the movant establishes that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215–16. Summary judgment is proper on claims for which the movant is the defendant only when the movant negates at least one element of each of the plaintiff's causes of action or when the movant conclusively establishes each element of an affirmative defense. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *see also Rhone–Poulenc Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999). If the movant conclusively negates an element of each of the plaintiff's causes of action or conclusively establishes its own cause of action the burden shifts to the non-movant to respond with evidence raising a genuine issue of material fact that would preclude summary judgment. *See Rhone–Poulenc*, 997 S.W.2d at 222–23. In deciding whether there is a disputed material fact precluding summary judgment, evidence favorable to the non-movant will be taken as true, every reasonable inference must be indulged in favor of the non-movant, and any doubts must be resolved in favor of the non-movant. *Knott*, 128 S.W.3d at 215.

■ A no-evidence summary judgment motion asserts that no evidence exists as to at least one essential element of the non-movant's claims on which the non-

---

**5.** *See* Tex Bus. & Com.Code Ann. § 24.009 (Vernon 2002).

**6.** *See* Tex Prop.Code Ann. § 13.001 (Vernon 2004).

movant would have the burden of proof at trial. *Bendigo v. City of Houston,* 178 S.W.3d 112, 114 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (citing *Jackson v. Fiesta Mart, Inc.,* 979 S.W.2d 68, 70–71 (Tex.App.-Austin 1998, no pet.)). The trial court must grant the motion unless the non-movant produces summary judgment evidence that raises a genuine issue of material fact. Tex.R. Civ. P. 166a(i); *Southwestern Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002). The movant "must be specific in challenging the evidentiary support for an element of a claim or defense; paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case." Tex.R. Civ. P. 166a(i), 1997 cmt.; *Mott v. Red's Safe and Lock Servs., Inc.,* 249 S.W.3d 90, 97 (Tex.App.-Houston [1st Dist.] 2007, no pet.). Moreover, "[p]aragraph (i) does not apply to ordinary motions for summary judgment under paragraphs (a) or (b), in which the movant must prove that it is entitled to summary judgment by establishing each element of its claim or defense as a matter of law." Tex.R. Civ. P. 166a(i), 1997 cmt.; *Brown v. Hearthwood II Owner's Ass'n, Inc.,* 201 S.W.3d 153, 157–58 & n. 7 (Tex.App.-Houston [14th Dist.] 2006, pet. denied).

■ In his amended motion for summary judgment, Love failed to identify any specific element of any of Hahn's claims on which Hahn had the burden of proof and had produced no evidence. Therefore, we dismiss Love's no-evidence motion for summary judgment as conclusory and address only his traditional motion for summary judgment. *See* Tex.R. Civ. P. 166a(i), 1997 cmt.; *Brown,* 201 S.W.3d at 157–58 & n. 7. When, as here, a trial court's order granting summary judgment does not specify the grounds relied upon, we affirm the summary judgment if any of the summary judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872–73 (Tex.2000).

### Love's Right to Summary Judgment on Hahn's Claims Under the Fraudulent Transfer Act and Love's Suit to Remove the Cloud from His Title

In his second and third issues, Hahn argues that Love was not entitled to summary judgment because Love did not prove as a matter of law either (1) that the conveyances of the property to Mid–Town and to Love were not fraudulent or (2) that Love himself was a bona fide purchaser of the property for value without notice and in good faith. We address these issues together with respect to both Hahn's fraudulent transfer claims and Love's suit to remove the cloud from his title.

### *1. Hahn's Claims Under the Fraudulent Transfer Act*

Love was awarded summary judgment on Hahn's claims against him under the Fraudulent Transfer Act on the ground that he was entitled to the bona fide purchaser defense in the Act set out at section 24.009(a) of the Business and Commerce Code. *See* Tex. Bus. & Com.Code Ann. § 24.009(a) (Vernon 2002). Section 24.009(a) states that a "transfer or obligation is not voidable under Section 24.005(a)(1) of this code against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." *Id.*

*Fraudulent Transfer*

A fraudulent transfer is a transfer by a debtor with the intent to hinder, delay, or defraud his creditors by placing the debtor's property beyond the creditor's reach. Tex. Bus. & Com.Code Ann. § 24.005(a)(1) (Vernon 2002) ("A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation ... with actual intent to hinder, delay, or de-

fraud any creditor of the debtor."); *Nobles v. Marcus*, 533 S.W.2d 923, 925 (Tex.1976).

The actual intent to defraud is shown, among other things, by evidence that the transfer was made to an insider, including a relative; the transfer was concealed; the debtor was sued or threatened with suit before the transfer and the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; the debtor was insolvent; and the transfer occurred shortly before or after a substantial debt was incurred. Tex. Bus. & Com.Code Ann. § 24.005(b) (Vernon 2002). A transfer to an insider is one of the factors in proving actual intent to defraud under the Fraudulent Transfer Act. *See* Tex. Bus. & Com. Code Ann. § 24.005(b)(1) (listing factors).[7]

 The facts and circumstances set out in section 24.005(b) that may be considered in determining fraudulent intent are non-exclusive and are considered mere "badges of fraud." *Flores v. Robinson Roofing & Const. Co., Inc.*, 161 S.W.3d 750, 755 (Tex.App.-Fort Worth 2005, pet. denied). Therefore, because " 'fraudulent

intent is only to be deduced from facts and circumstances which the law considers as mere badges of fraud, and not fraud per se, these must be submitted to the trier of fact, which draws the inference as to the fairness or fraudulent character of the transaction.' " *Id.* (quoting *Coleman Cattle Co., Inc. v. Carpentier*, 10 S.W.3d 430, 433 (Tex.App.-Beaumont 2000, no pet.)); *see also Quinn v. Dupree*, 157 Tex. 441, 303 S.W.2d 769, 774 (1957). Thus, "[t]he question of whether a debtor conveyed property with the intent to defraud creditors is 'ordinarily a question for the jury or the court passing on the fact' " *Flores*, 161 S.W.3d at 755 (quoting *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.1986)); *see also Equitable Trust Co. v. Roland*, 644 S.W.2d 46, 51 (Tex.App.-San Antonio 1982, writ ref'd n.r.e.) (pointing out that trial court's decision to grant instructed verdict on fraudulent conveyance issues "was in contradiction of the general rule that the existence of a fraudulent conveyance is a question for the trier of the facts").[8] "Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credi-

---

7. The Fraudulent Transfer Act states:

An "Insider" includes:
(A) if the debtor is an individual:
(i) a relative of the debtor or a general partner of the debtor;
(ii) a partnership in which the debtor is a general partner;
(iii) a general partner in a partnership described in subparagraph (ii) of this paragraph; or
(iv) a corporation of which the debtor is a director, officer, or person in control.
. . .
(D) an affiliate, or an insider of an affiliate as if the affiliate were the debtor; and
(E) a managing agent of the debtor.
Tex. Bus. & Com.Code Ann. § 24.002(7).

8. When a transferee is an insider and knows the transferor is insolvent at the time of the transfer he cannot be a good faith transferee. *Flores*, 161 S.W.3d at 756; *Putman v. Stephenson*, 805 S.W.2d 16, 20 (Tex.App.-Dallas, 1991, no writ). Nor is insider status limited to the four subjects listed in section 24.002(7);

rather, the list is provided "for purposes of exemplification." *Putman*, 805 S.W.2d at 18. In general, an "insider" is "an entity whose close relationship with the debtor subjects any transactions made between the debtor and the insider to heavy scrutiny." *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 609 (Tex.App.-Houston [1st Dist.] 2002, no pet.). In determining insider status, courts are to consider (1) the closeness of the relationship between the transferee and the debtor and (2) whether the transactions were at arm's length. *Id.* (citing *In re Holloway*, 955 F.2d 1008, 1010 (5th Cir.1992)). However, it is not necessary to prove that a transferee is an insider in order to prove the transferee's knowledge of the transferor's fraudulent intent. *See* Tex. Bus. & Com.Code Ann. § 24.005(b); *Wright*, 16 Tex. 34, 1856 WL 4851, at *5; *Flores*, 161 S.W.3d at 754 (listing, from Tex. Bus. & Com Code Ann § 24.005(b), "facts and circumstances, known as badges of fraud, that may be considered in determining fraudulent intent" and opining that if " 'fraudulent intent is only to be de-

bility of the witnesses and the weight to be given to their testimony." *Flores*, 161 S.W.3d at 755.

If intent to defraud is proved, a creditor may obtain "avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim," "an attachment or other provisional remedy," "an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred," or "any other relief the circumstances may require." Tex. Bus. & Com. Code Ann. § 24.008(a) (Vernon 2002). Also, "If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds." *Id.* § 24.008(b).

### Bona Fide Purchaser Defense

■■■■■■ The remedies provided creditors by the Act are, however, subject to the limitation in Section 24.009 of the Busi-

ness and Commerce Code, providing for a bona fide purchaser defense. Specifically, section 24.009(a) of the Act states that a "transfer or obligation is not voidable under Section 24.005(a)(1) of this code against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." *Id.* § 24.009(a) (Vernon 2002). Good faith is thus an affirmative defense to a fraudulent transfer claim. *Flores*, 161 S.W.3d at 756. A person who invokes that affirmative defense "carries the burden of establishing good faith and the reasonable equivalence of the consideration obtained." *Id.* (quoting Uniform Fraudulent Transfer Act § 8 cmt. 1, 7A II U.L.A. 352 (1999)). Thus, in seeking summary judgment on his bona fide purchaser affirmative defense, Love had the burden to prove as a matter of law that he took the property in good faith. *See Flores*, 161 S.W.3d at 756; *Rhone–Poulenc*, 997 S.W.2d at 223.[9]

duced from facts and circumstances which the law considers as mere badges of fraud and not fraud per se, these must be submitted to the trier of fact, which draws the inference as to the fairness or fraudulent character of the transaction.' ") (quoting *Coleman Cattle Co. v. Carpentier*, 10 S.W.3d 430, 434 (Tex. App.-Beaumont 2000, no pet.)).

9. In supplemental briefing, Love argues that Hahn bears the burden to prove that Love was not a good faith purchaser for value, and, in support, he cites *Rucker v. Steelman. See* 619 S.W.2d 5, 7 (Tex.App.-Houston [1st Dist.] 1981, writ ref'd n.r.e.) ("A creditor seeking to defeat a prior conveyance of a judgment debtor must prove fraudulent intent on the part of the debtor at the time of the execution of the conveyance and then, if a valuable consideration is shown to have been paid for the property, the creditor must further prove that at the time of such payment the party taking the conveyance had notice of the debtor's fraud"). However, *Rucker* was a suit to remove cloud on title in which the creditor was the plaintiff attempting to show that he was entitled to have a cloud on his title removed. *Id.* In a suit to remove cloud on title, the burden of proof is on the person seeking to

remove the cloud from his title. If the cloud is a fraudulent transfer, the person asserting fraudulent transfer must prove fraudulent intent and notice on the part of the transferee. *Id.* Here, however, Love, the purchaser, not Hahn, the creditor, sought summary judgment on his own suit to remove the cloud from his title and on his affirmative defense that he was not subject to Hahn's fraudulent transfer claims because he was a bona fide purchaser under the Texas Uniform Fraudulent Transfer Act. *See* Tex. Bus. & Com.Code Ann. §§ 24.001–.013 (Vernon 2002 & Supp.2008). The TUFTA treats good faith raised by the party claiming to be a bona fide purchaser as an affirmative defense and places the burden of proving the defense on the party asserting it—in this case, on Love. *See Flores v. Robinson Roofing & Const. Co.,* 161 S.W.3d 750, 756 (Tex.App.-Fort Worth 2005, pet. denied) (holding that burden of proving good faith rests on party invoking defense and that it is not appropriate basis for no-evidence summary judgment). Therefore, we analyze this potential ground for support of the trial court's granting of summary judgment under Love's traditional motion for summary judgment because it is not an appropriate basis to grant a no-evidence summary judgment.

To defeat summary judgment based on such proof, Hahn had to raise a material fact issue on Love's good faith. *See Rhone–Poulenc,* 997 S.W.2d at 222–23.

A transferee who takes property with knowledge of such facts as would excite the suspicions of a person of ordinary prudence and put him on inquiry of the fraudulent nature of an alleged transfer does not take the property in good faith and is not a bona fide purchaser. *See Wright v. Linn,* 16 Tex. 34, 1856 WL 4851, at *5 (Tex.1856) (holding that lack of good faith is proved by any "competent" means, which affords any fair presumption or inferences as to the real object and intention of the parties, tending to show knowledge of "the fraudulent acts and intentions of the [transferor]"); *First S. Props., Inc. v. Gregory,* 538 S.W.2d 454, 457–58 (Tex.Civ. App.1976) (holding that transferee without actual or constructive notice of circumstances tending to show fraudulent intent of transferor is bona fide purchaser); *see also Flores,* 161 S.W.3d at 756 (defining good faith as lack of awareness of transferor's intent). Notice of fraudulent intent can be either actual or constructive. *See Madison v. Gordon,* 39 S.W.3d 604, 606 (Tex.2001); *First S. Props.,* 538 S.W.2d at 457–58. Actual notice results from personal information or knowledge; constructive notice is notice the law imputes to a person not having personal information or knowledge. *Madison,* 39 S.W.3d at 606; *see Carr v. Hunt,* 651 S.W.2d 875, 880 (Tex. App.-Dallas 1983, writ ref'd n.r.e.) (finding no notice of actual knowledge of fraudulent acts or facts that would have put purchaser of property on further inquiry as to possible claims of fraud).

The question of whether a party has notice is a "question of fact which is foreclosed by the judgment of the trier of the facts; it becomes a question of law only when there is no room for ordinary minds to differ as to the proper conclusion to be drawn from the evidence." *O'Ferral v. Coolidge,* 149 Tex. 61, 228 S.W.2d 146, 148 (1950). Thus a transferor's notice of fraudulent intent is a question of fact that generally goes to the jury. *See Wright,* 16 Tex. 34, 1856 WL 4851, at *5 (because proof positive of actual knowledge of purchaser of property and fraudulent acts of vendor could seldom be obtained, evidence conducing to prove fraudulent intent should have been permitted to go to jury to decide whether assignment was fraudulent and whether purchaser "was party to and affected by the attempted fraud of his vendor"); *see also Hardy Road 13.4 Joint Venture v. Med. Ctr. Bank,* 867 S.W.2d 889, 893 (Tex.App.-Houston [1st Dist.] 1993, writ denied) (noting that whether or not party had notice of title issues is generally fact issue and thus is inappropriate for resolution by summary judgment).

*Application of the Law*

The evidence shows that this case is no exception to the rule that fraudulent transfer and bona fide purchaser status are generally questions for the trier of fact that are inappropriate for summary judgment.

Love stated in his motion for summary judgment and in his affidavit that he purchased the property for nearly $450,000. Hahn does not dispute Love's summary judgment evidence that Love paid a reasonably equivalent value for the property. However, Love also had to prove that he was a purchaser in good faith as a matter of law and was, therefore, entitled to summary judgment on Hahn's claims.

Love argues that the alleged legal sufficiency of the 2002 deed proves that Mid–Town became the true owner of the property in 2002, when there was no judgment lien against Session attached to the property. Therefore, Love argues that the property was clear of Hahn's lien when Session sold it to his predecessor, Mid–

Town, which validly conveyed it to him in April 2004.[10] The lien Hahn filed on the revived judgment in March 2004 was invalid because Session had sold the property when there was no judgment lien encumbering it, and therefore Love was not on notice of a valid lien. Love also states that he did not have actual or constructive knowledge of any intent to defraud in the transfer of the property from Session to Mid–Town or from Mid–Town to himself.

The only evidence Love presented to prove his lack of notice of Hahn's claim was his own affidavit. In his affidavit, Love testified that at the time he purchased the property he did not know O'Neal Session, Pamela Session, Toshoner Session Egans, or Hahn and did not know anything about Mid–Town except that it was the owner of the property. Love testified, "Shortly before April 14, 2004, I received a telephone call from Herman Gary. Herman Gary is a local realtor in Houston who I have known for several years. In the past I have invested in real estate in Houston and have utilized Mr. Gary on several occasions." Gary stated "that the property in question in this lawsuit was available for purchase and that it represented a good perspective *[sic]* investment," and he "indicated that I would

have to act relatively fast because the initial purchaser under a contract could not qualify to close and the contract was about to expire." Love averred that he "purchased the property in good faith, for a valuable consideration and had no knowledge of any claim by Hahn whatsoever."

However, in tension with his claim in his affidavit that he "had no knowledge of any claim by Hahn whatsoever," Love also pled in his motion for summary judgment that Hahn had alleged that "Love's father was a close personal friend of Herman Gary, the real estate broker, that Love had known Gary for 20 years and that Gary brought him many deals," that he, Love, "had loaned Gary and Strickland [the initial intended buyer of the property] money on prior occasions" and that "Strickland bought other property from Love on prior occasions." Love stated that because of the success of his past dealings with Gary, he was interested in the investment opportunity and proceeded to purchase the property by sending a cashier's check for $448,587.13 to American Title Company— the same title company for the attempted sale of the property to Strickland as well as to Love—and that Gary took the necessary closing documents for Love to sign in New Orleans, Louisiana.[11]

---

10. *See* Tex. Prop.Code Ann. § 52.001 (Vernon Supp.2008) (stating that procedures for establishing judgment lien apply to "a first or subsequent abstract of judgment" that is properly recorded and indexed). The parties agree that the second abstract of judgment is not retroactive. However, the Fraudulent Transfer Act provides relief for creditors when "the creditor's claim arose before or *within a reasonable time after* the transfer was made." Tex. Bus & Com.Code Ann. § 24.005(a) (Vernon 2002) (emphasis added).

11. In his motion for summary judgment, Love stated:

> Hahn alleges that the sale to Love was a sale to an insider. The basis for this allegation is that Love's father was a close personal friend of Herman Gary, the real es-

tate broker, that Love had known Gary for 20 years and that Gary brought him many deals. Hahn also claims Love is an insider because he had loaned Gary and Strickland (the initial intended buyer of the property) money on prior occasions. Hahn alleges that Strickland bought other property from Love on prior occasions. For purposes of the Fraudulent Transfer Act, "insider" is defined in § 24.002(7) of the Tex. Bus. & Com.Code and none of the definitions or categories of insiders include the relationships or facts claimed by Hahn. As a matter of law, the claim that Love is an insider fails.

> It is clear that Love purchased in good faith and for a reasonably equivalent value and, therefore, no action lies against him under the Fraudulent Conveyance Act.

The Texas Rules of Civil Procedure provide that a summary judgment "may be based on uncontroverted testimonial evidence of an interested witness ... if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." TEX.R. CIV. P. 166a(c). Love's testimony is "clear, positive and direct," but it is not "otherwise credible and free from contradictions and inconsistences" with regard to Love's claimed lack of "knowledge of any claim by Hahn whatsoever." Rather, Love acknowledged that he had past real estate deals with Gary, a realtor whom he had known for "several" years, and he acknowledged in his motion for summary judgment that Hahn had claimed that Love "had loaned Gary and Strickland (the initial intended buyer of the property) money on prior occasions," and that "Strickland bought other property from Love on prior occasions," while he also stated in his affidavit in support of that motion that he knew from Gary that he had "to act relatively fast because the initial purchaser under a contract could not qualify to close and the contract was about to expire."

In addition to Love's own averrals regarding his relationship with both Gary and Strickland, Hahn produced evidence of numerous facts raising an inference of fraudulent conveyance and of Love's actual or constructive knowledge of fraudulent intent in the transfers of the property, including the following:

- The 2002 deed from O'Neal Session to Mid–Town, an alleged insider corporation controlled by Session's daughter and/or granddaughter occurred immediately after Hahn's original judgment lien on the property expired, yet it was not recorded until 2004, well after

the second judgment lien on the property naming O'Neal Session as the debtor had attached.

- After the purported execution of the 2002 deed, O'Neal Session and his wife Myria—not Mid–Town—executed an earnest money contract on or about August 29, 2003, to convey the property to Strickland; Gary was the realtor who represented Strickland. O'Neal and Myria delivered the contract to Fidelity National Title Company. Fidelity asked for a judgment payoff for Hahn's outstanding judgment lien. O'Neal and Myria announced withdrawal and cancellation of the contract for sale to Strickland on December 2, 2003.

- Hahn filed a motion to revive his judgment and lien a week later on December 10, 2003 and served scire facias on O'Neal Session.

- About January 7, 2004, O'Neal and Myria signed another earnest money contract for conveyance of the property to Strickland for $450,000. This time Gary was the realtor for O'Neal and Myria Session.

- On January 21, 2004, two days before the hearing on revival of the judgment, Pamela Session, recorded the 2002 deed conveying the Property to Mid–Town, with its allegedly defective legal description.

- On January 23, 2004, Hahn's judgment was revived, and he filed an abstract of judgment listing O'Neal Session as the debtor on March 1, 2004.

- O'Neal and Myria Session filed a correction deed in the transfer of the property from them to Mid–Town on March 15, 2004.

Moreover, the transfer that Hahn seeks to set aside is not even one from the debtor.

The debtor was O'Neal Session, the grantor in Love's deed was Mid–Town.

- On April 14, 2004, Mid–Town conveyed the property to Love by general warranty deed pursuant to an earnest money contract that identified the sellers of the property as O'Neal and Myria. This time Gary served as the broker for Love, who, by his own admission, had known Gary and Strickland well for a long time and had done deals with them. No distribution of the proceeds of the sale was made to Hahn, despite his judgment lien against Session.

Hahn points out that Gary, the broker who acted as Love's agent for the purchase of the property, had previously acted in the first abortive attempted sale of the property to Strickland in 2003 as the broker for Strickland and in the second abortive sale in January 2004 as the broker for both Strickland and the judgment debtor Session. The summary judgment record also reflects that both attempted sales by Session to Strickland in 2003 took place *after* the property was purportedly conveyed from Session to Mid–Town in 2002, and both attempted sales took place *before* the purported 2002 deed was recorded. It further reflects that the 2002 deed was recorded *after* Session received notice of Hahn's suit to revive his judgment lien and that, similarly, the correction deed was filed *after* Hahn's abstract of judgment lien against Session had been refiled in March 2002.

Gary as the broker for Love, Strickland, and Session in the three transactions necessarily had notice of each of these facts, as well as of both attempts by Session to sell the property to Strickland after the

property was purportedly conveyed to Mid–Town in 2002, and, therefore, of Hahn's interest in the property. These facts, as well as Love's own statements and his adoption of the facts stated in Hahn's pleadings, are inconsistent with Love's claim that he had "no knowledge of any claim by Hahn whatsoever," since he acknowledged that he knew about a prior contract for the sale of the property that had not gone through—namely, the prior contract between Session and Strickland, the "initial purchaser"—and that he had known both the broker Gary and Strickland for years and had done real estate deals with them and loaned them money.[12]

The close nature of Love's long-standing business relationship with Gary and Strickland and the nature of Gary's obligations to Love as his broker raise fact questions as to whether Love had either actual or constructive notice that the Sessions' conveyance of the property to Mid–Town was fraudulent and that Mid–Town might not have a clear title to the property. *See Janes v. CPR Corp.,* 623 S.W.2d 733, 740 (Tex.App.-Houston [1st Dist.] 1981, no writ) ("A broker is a fiduciary required to exercise fidelity in good faith toward his principal in all matters within the scope of his employment. . . . This requirement not only forbids conduct on the part of the broker which is fraudulent or adverse to his client's interest, but also imposes upon him the positive duty of communicating all information he may possess or acquire which is, or may be, material to his employer's advantage.").

---

12. *See Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994) (in evaluating motion for summary judgment on pleadings, court assumes that all allegations and facts in nonmovant's pleadings are true and indulges all inferences in nonmovant's pleadings in light most favorable to nonmovant); *Emerald Oil and Gas, L.C. ex rel. Saglio P'ship Ltd. v.*

*Exxon Corp.,* 228 S.W.3d 166, 169 (Tex.App.-Corpus Christi 2005, no pet.) (same); *see also Beta Supply, Inc. v. G.E.A. Power Cooling Sys., Inc.,* 748 S.W.2d 541, 542 (Tex.App.-Houston [1st Dist.] 1988, writ denied) ("assertions of fact, not pled in the alternative, in the live pleadings of a party are regarded as formal judicial admissions").

Because there are fact questions both as to whether the transfer of the property to Love was fraudulent and as to Love's actual or constructive notice of facts and circumstances indicating the intent to defraud for purposes of the Fraudulent Transfer Act, we hold that Love failed to establish his entitlement to summary judgment on his bona fide purchaser affirmative defense under section 24.009(a) of the Texas Business and Commerce Code. We sustain Hahn's second and third issues insofar as they relate to Hahn's fraudulent transfer claims.

**2. *Love's Right to Summary Judgment on his Suit to Remove Cloud on Title***

Hahn also contends that material fact issues precluded summary judgment on Love's suit to remove the cloud on his title based on Love's claim to be a bona fide purchaser without notice of a valid claim against the property.

A bona fide purchaser is protected under Texas law against an interest in property, such as Hahn's judgment creditor's lien, unless the instrument was on file at the time of the purchase. Specifically, section 13.001 of the Texas Property Code states:

(a) A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.

(b) The unrecorded instrument is binding on a party to the instrument, on the party's heirs, and on a subsequent purchaser who does not pay a valuable consideration or who has notice of the instrument.

TEX. PROP.CODE ANN. § 13.001(a), (b) (Vernon 2004).

"A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *Angell v. Bailey,* 225 S.W.3d 834, 838 n. 6 (Tex.App.-El Paso 2007, no pet.). "Any deed, contract, judgment or other instrument not void on its face that purports to convey an interest in or make any charge upon the land of a true owner, the invalidity of which would require proof, is a cloud upon the legal title of the owner." *Johnson v. Williams,* No. 01–05–00445–CV, 2006 WL 1653656, at *4 (Tex.App.-Houston [1st Dist.] June 15, 2006, pet. denied) (mem.op.) (quoting *Best Inv. Co. v. Parkhill,* 429 S.W.2d 531, 534 (Tex.Civ.App.-Corpus Christi 1968, writ dism'd w.o.j.)); *In re Stroud Oil Props., Inc.,* 110 S.W.3d 18, 26 (Tex.App.-Waco 2002, no pet.).

The principal issue in a suit to remove a cloud from a title, or a suit to quiet title, is the existence of a cloud that equity will remove. *Johnson,* 2006 WL 1653656, at *4; *Bell,* 606 S.W.2d at 952–53. An action to remove a cloud from title exists "to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Bell,* 606 S.W.2d at 952 (quoting *Thomson v. Locke,* 66 Tex. 383, 1 S.W. 112, 115 (1886)). In a suit to remove a cloud from his title, the plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief. *See Bell v. Ott,* 606 S.W.2d 942, 952 (Tex.App.-Waco 1980, writ ref'd n.r.e.). That is, the plaintiff must prove, as a matter of law, right, title, or ownership in himself with sufficient certainty to enable the court to see that he has a right of ownership and that the alleged adverse claim is a cloud on the title that equity will remove. *See Johnson,* 2006 WL 1653656, at *4; *Wright v. Matthews,* 26 S.W.3d 575,

578 (Tex.App.-Beaumont 2000, pet. denied) (citing *Ellison v. Butler*, 443 S.W.2d 886, 888–89 (Tex.App.-Corpus Christi 1969, no writ)).

Love argues that he is entitled to summary judgment removing the cloud from his title because he has proved as a matter of law that there was no lien on the property when it was validly conveyed to his transferor Midtown by general warranty deed in 2002 and, therefore, the property was free of Hahn's lien when Love purchased the property from Mid–Town in April 2004. Thus, Love had no notice of a valid lien on the property.

Love's argument is without merit. Hahn's lien was an "instrument not void on its face that purport[ed] to ... make [a] charge upon the land of a true owner, the invalidity of which would require proof." *Johnson*, 2006 WL 1653656, at *4; *In re Stroud Oil Props.*, 110 S.W.3d at 26. It was, therefore, by definition, a cloud upon Love's legal title. *See Johnson*, 2006 WL 1653656, at *4; *In re Stroud Oil Props.*, 110 S.W.3d at 26. The Texas Supreme Court has held that "a purchaser is bound by every recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims." *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex.1982). The *Westland Oil* court stated:

> The rationale for the rule is that any description, recital of fact, or reference to other documents puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of all the matters referred to and affecting the estate is obtained.

*Id.* (quoting *Loomis v. Cobb*, 159 S.W. 305, 307 (Tex.Civ.App.-El Paso 1913, writ ref'd)).

Here, a title search of the property would have indicated the nature of the conveyance from the Sessions to Mid–Town. *See First S. Props., Inc. v. Vallone*, 533 S.W.2d 339, 340 (Tex.1976) (outlining appellant's title search as including "a courthouse search of the grantor-grantee indices, deed of trust records, lis pendens records, abstract of judgment records, mechanic's and materialman's lien records, and the federal bankruptcy records, and a search of indices to the same records at [a Houston title company]"). The chain of title clearly reflected the Sessions' conveyance of the property to Mid–Town in 2002—a conveyance that several title searches indicated was of questionable validity because the 2002 deed did not contain a metes and bounds description of the property. And it clearly indicated the March 15, 2004 filing of the correction deed that was executed on March 3, 2004, two days after Hahn's judgment lien against O'Neal Session was refiled. Moreover, previous title searches had returned information regarding Hahn's interest in O'Neal Session's property. These facts also raise a fact question as to whether Love had, or should have had, notice of Hahn's interest in the property. *See Martin v. Cadle Co.*, 133 S.W.3d 897, 905 (Tex. App.-Dallas 2004, pet. denied) (holding that party "cannot be considered innocent purchasers without notice because, although they submitted affidavit testimony stating they purchased the property in good faith, they are charged with knowledge of all facts appearing in the chain of title to the property" and holding that suspicious circumstances in timing of transfer "put them on notice of the defects within their chain of title").

Moreover, as shown above, Hahn produced summary judgment evidence, in ad-

dition to the information a title search would have shown, sufficient to raise material fact questions of facts and circumstances giving rise to the inference of fraud and of Love's actual or constructive notice of those facts. Accordingly, we hold that the trial court erred in granting Love summary judgment on his suit to remove the cloud from his title. *See* Tex.R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215–16 (holding that summary judgment is properly granted only when there are no genuine issues of material fact).

We sustain Hahn's first, second, and third issues insofar as they relate to Love's suit to remove the cloud from his title.[13]

### Love's Right to Summary Judgment on Hahn's Counter–Claim for a Constructive Trust

In his fourth issue, Hahn claims that a legal basis exists for imposing a constructive trust against Love. To be entitled to summary judgment on Hahn's counterclaim that a constructive trust should be imposed on the property, Love was required to prove as a matter of law that Hahn failed to meet at least one of the requirements for imposing a constructive trust. *Science Spectrum, Inc.*, 941 S.W.2d at 911. In deciding whether there is a disputed material fact precluding summary judgment, evidence favorable to the non-movant, Hahn, must be taken as true, every reasonable inference must be indulged in favor of the non-movant, and any doubts must be resolved in favor of the non-movant. *Knott*, 128 S.W.3d at 215.

■■■■ A constructive trust is an equitable remedy created by the courts to pre-

vent unjust enrichment—a breach of duty or an actual or constructive fraud must be present in order to impose a constructive cause. *See Medford v. Medford*, 68 S.W.3d 242, 248 (Tex.App.-Fort Worth 2002, no pet.). To establish that a constructive trust exists, the proponent must prove (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *Hubbard v. Shankle*, 138 S.W.3d 474, 485 (Tex.App.-Fort Worth 2004, pet. denied) (citing *Mowbray v. Avery*, 76 S.W.3d 663, 681 n. 27 (Tex.App.-Corpus Christi 2002, pet. denied)).

■■■■ Love argues in his motion for summary judgment that Hahn presented no evidence of any prior relationship between Hahn and Love and that strict proof of a prior confidential relationship between the parties is required. He cites *Hamblet v. Coveney* to support his contention. *See* 714 S.W.2d 126, 128 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.). In *Hamblet*, this Court stated, "Before a constructive trust can be imposed, there must be strict proof of a prior confidential relationship and unfair conduct or unjust enrichment on the part of the wrongdoer." *Id.* However, *Hamblet* was not a case that involved actual fraud, and, therefore, it is distinguishable from the present case. *See id.* at 132.

The Texas Supreme Court has held, "Actual fraud, as well as breach of a confidential relationship, justifies the imposition of a constructive trust." *Meadows v. Bierschwale*, 516 S.W.2d 125, 128 (Tex. 1974). The appellant in *Meadows* made an argument similar to Love's, namely, that a

---

**13.** Because the sufficiency of the legal description in the purported 2002 deed is not material to the proof of Love's right to removal of the cloud from his title, we do not address Hahn's first issue, arguing that Love did not prove his entitlement to have the

cloud removed from his title because the description of the land in the general warranty deed dated April 26, 2002, by which Session purported to convey the property to Mid–Town, was legally insufficient and, therefore, the deed was void as a matter of law.

constructive trust was appropriate only when a breach of a fiduciary relationship was involved. *Id.* The *Meadows* Court stated that the appellant's argument might have been the result of confusion arising from a previous case that had held that a fiduciary relationship must have arisen before and apart from the agreement made the basis of the suit. *Id.* at 129 (quoting *Consolidated Gas & Equip. Co. v. Thompson,* 405 S.W.2d 333, 336 (Tex.1966)). The *Meadows* Court went on to state that the language in its previous case "must be viewed in the context of the fact situation that gave rise to it." *Id.*

Here, Hahn has alleged that Love, the Sessions, Gary, and Mid–Town were involved in an actual fraud. There are genuine issues of material fact as to whether an actual fraud took place and whether Love was unjustly enriched in his dealings with the Sessions and Mid–Town, as discussed above; furthermore, the property in question is an identifiable res. *See Meadows,* 516 S.W.2d at 129; *Hubbard,* 138 S.W.3d at 485. We conclude that summary judgment on this issue was not proper because Love failed to prove that Hahn failed to meet at least one of the requirements for imposing a constructive trust as a matter of law. *See Science Spectrum, Inc.,* 941 S.W.2d at 911.

We sustain Hahn's fourth issue.[14]

### Conclusion

We reverse the order of the trial court and remand the cause for proceedings consistent with this opinion.

14. Because we reverse the order of the trial court granting Love's motion for summary judgment and remand this cause to the trial court, we do not need to address Hahn's fifth issue regarding whether it was error for the trial court to overrule Hahn's objection to Love's motion for summary judgment, which was filed after the deadline set out in the trial court's docket control order. *See* Tex R.App. P. 47.1.