**Opinion issued December 1, 2020**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-19-00930-CV**

———————————

**COMFORT AGARA, Appellant**

**V.**

**GPI TX-DMII, INC. D/B/A MERCEDES-BENZ OF CLEAR LAKE, Appellee**

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 18-CV-0608**

## MEMORANDUM OPINION

Comfort Agara challenges the trial court's rendition of summary judgment for

GPI TX-DMII, Inc. d/b/a Mercedes-Benz of Clear Lake for injuries she sustained

from a car accident. On appeal, Agara contends that the trial court erred in granting

summary judgment. We affirm.

**Background**

*The Accident*

In May 2016, Comfort Agara took her 2009 Mercedes to Mercedes-Benz of Clear Lake ("MBCL") because her check engine light was on. As a part of MBCL's "limited courtesy vehicle inspection" service, the mechanic checked the power steering fluid level, power steering condition, and power locking system operation. The inspection reflected that these items did not need repairs.

The inspection showed, however, that Agara's vehicle had other problems. The service technician recommended that she fix her brakes, fog lights, and centrifuge cover, among other things. He also recommended that she replace both rear tires because they were "worn bald." Agara authorized repairs to her brakes and centrifuge cover but declined the other recommended repairs.

After MBCL repaired her brakes and centrifuge cover, Agara left MBCL and drove north onto Interstate Highway 45 as it began sprinkling. A few minutes later, Agara could not move her steering wheel or change lanes, causing her to crash into the left side of the median. The crash caused her car to spin out and face oncoming traffic. Emergency responders and police officers arrived at the scene of the accident. While EMS examined her injuries, Agara told them that she "started to hydroplane" before her car spun out and hit the wall. After investigating the cause of the accident, the officers cited Agara for driving at an unsafe speed. EMS examined her and then

transported her to a nearby hospital. Agara sustained severe injuries to her neck, upper and lower back, shoulders, groin area, and head. Weeks after the accident, an inspection of Agara's vehicle revealed that the power steering fluid was low and the steering wheel was hard to turn.

### The Lawsuit

Agara sued MBCL for negligence, breach of express and implied warranties, and gross negligence for the injuries she sustained from the accident. Agara alleged that the accident was caused by MBCL's negligent service and maintenance to her vehicle's power steering system components. Agara alleged that she "lost control of her steering" because MBCL failed to "properly secure connections, seals, and/or fittings," "properly inspect the vehicle before" releasing the vehicle to her, and "adequately warn her of the known dangers." MBCL answered and generally denied all allegations. It also asserted affirmative defenses based on proximate cause by MBCL.

After an adequate time for discovery had passed, MBCL moved for a no-evidence summary judgment, arguing that Agara had no evidence in support of several elements of all her claims. MBCL attached evidence, including deposition testimony of Agara and MBCL's technician and MBCL's inspection report. MBCL also moved for traditional summary judgment, arguing, among other things, that other contributing factors caused her accident, including her bald rear tires and her

3

excessive driving speeds in the rainy weather. Agara responded to these motions and attached evidence to show that the lack of power steering fluid caused the accident. Agara's evidence included her own deposition, MBCL's inspection report, and the post-accident inspection report.

The trial court granted MBCL's no-evidence and traditional summary-judgment motions. The summary-judgment orders became appealable after Agara's claims were dismissed with prejudice. Agara moved for a new trial, but the trial court denied her motion. Agara appealed, challenging the dismissal of only her claims for negligence and breach of express and implied warranties. She did not appeal the dismissal of her claim for gross negligence.

## Analysis

Agara argues that the trial court erred by granting MBCL's traditional and no-evidence motions for summary judgment because she presented more than a scintilla of evidence for each essential element and she established that a genuine issue of material fact exists.

### A. Standard of review

A party seeking summary judgment may move for both traditional and no-evidence summary judgment. TEX. R. CIV. P. 166a(c), (i). When a party has sought summary judgment on both grounds, we analyze the no-evidence motion first. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). We will not address

4

the traditional motion if we determine the trial court properly granted the no-evidence summary-judgment motion on the same claims. *See Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

For a defendant to prevail on a no-evidence motion for summary judgment, the defendant must establish that no evidence supports an essential element of the plaintiff's claim on which the plaintiff would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the plaintiff to present evidence raising a genuine issue of material fact as to each element specified in the defendant's motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The Texas Supreme Court has provided four circumstances that warrant a trial court's grant of a no-evidence motion:

> (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.

*King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

A defendant that files a traditional motion for summary judgment has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Hillis v. McCall*, 602 S.W.3d 436, 440 (Tex. 2020). For a defendant to be entitled to traditional

summary judgment, the defendant must negate at least one essential element of each of the plaintiff's claims. *See StarNet Ins. Co. v. RiceTec, Inc.*, 586 S.W.3d 434, 443 (Tex. App.—Houston [1st Dist.] 2019, pet. denied).

We review a trial court's grant of summary judgment de novo. *Trial v. Dragon*, 593 S.W.3d 313, 316 (Tex. 2019). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

**B.    Negligence**

Agara contends that MBCL's negligence caused her injuries resulting from the accident. She argues that MBCL had a duty to properly service and inspect her vehicle and failed to do so after agreeing to check the power steering fluid level, the condition of the power steering fluid, and the steering components and the steering system. She also argues that MBCL breached its duty "because there was very little power steering fluid" in in her car, causing her injuries from the accident occurring minutes after she picked up her vehicle from MBCL.

MBCL asserts that the trial court did not err in granting its no-evidence motion because Agara presented no evidence of causation. MBCL argues that Agara failed to show that, when she picked up her car, there was insufficient power steering fluid in the vehicle, that there was a leak in the power steering system, or that a lack of

6

power steering fluid could have caused her collision. MBCL contends that Agara's negligence claim lacks a "scintilla of evidence linking any actions or inaction of [MBCL] with her accident," because she urges the court to "substitute 'temporal proximity' for actual evidence of causation."

To prove negligence, Agara must show that (1) MBCL owed her a duty, (2) MBCL breached its duty, (3) MBCL's breach proximately caused her injuries, and (4) her damages resulted from this breach. *See Mission Petroleum Carriers, Inc. v. Solomon*, 106 S.W.3d 705, 710 (Tex. 2003). To survive a no-evidence motion for summary judgment, Agara must present evidence raising a fact issue on proximate causation. *See Chamie v. Mem'l Hermann Health Sys.*, 561 S.W.3d 253, 255 (Tex. App. – Houston [14th Dist.] 2018, no pet.)

Proximate cause consists of cause in fact and foreseeability. *Rogers v. Zanetti*, 518 S.W.3d 394, 402 (Tex. 2017). A plaintiff may not establish proximate cause by "mere conjecture, guess, or speculation." *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). "The test for cause in fact is whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred." *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005).

Agara asserts that the temporal proximity between the maintenance of her vehicle and the car accident amounts to more than a scintilla of probative evidence for the causation element. She relies on MBCL's inspection report showing that

MBCL's mechanic checked the power steering fluid level, condition of the power steering fluid, the steering components, and the steering system. The mechanic noted each item "passed" and determined that no repairs were needed. Agara also relied on her own testimony that, shortly before the accident, her "power steering locked," and she "couldn't steer left or right." She also testified that she was "trying to steer it, but it was just really hard." Finally, Agara argues that the inspectors found low levels of power steering fluid during the post-accident inspection. They also reported that the steering was "stiff to turn."

MBCL presented evidence showing that the condition of Agara's tire conditions, the weather conditions, and her driving speeds likely caused the accident. During the time Agara's vehicle was at MBCL, the technician determined that Agara's rear tires were below the minimum safety standards and noted that they were "worn bald." Agara declined the technician's recommendation to replace these tires. During the investigation of the accident, the officer observed that "both rear tires were completely bald with little to no tread." The post-accident inspection of the condition of Agara's tires aligned with the technician and officer's findings. Agara's right rear tire was "worn down to wear [sic] bears almost bald" and "left rear tire [wa]s bald."

The summary-judgment evidence shows the rainy weather conditions on the day of Agara's accident. Agara testified it was sprinkling, which aligned with the

officer's crash record report showing that it was raining and that there was standing water on the road. The evidence shows that Agara told emergency responders, "I started to hydroplane and next thing I knew, I spun out and hit the wall."

The summary-judgment evidence includes relevant information about Agara's driving speed before the accident. Agara testified that, after she had left MBCL, she was driving at a "minimum speed" about 45 miles per hour on the highway. But the crash record report noted that Agara was driving "at an unsafe speed due to the weather conditions" and that the officer cited her for driving at an unsafe speed.

Agara next argues that the Centro Inspection Agency's examination of her car, weeks after the accident, is more than a scintilla of probative evidence of causation. The inspection showed that:

- the car was inoperable;
- the power steering fluid level was low;
- the power steering pump was making a "whinning" [sic] noise;
- the steering [wheel] was hard to turn;
- there was no sign of repairs to the steering system; and
- there was a lot of fluid under the vehicle for an unknown length of time.

The inspection report shows that the inspector was unable to determine the source of the leaking fluid but speculated that it could have been oil or power steering fluid. In noting the cause of failure to the power steering component, the report noted that there was a "material failure to [the] power steering rack input seal," which was

"possibl[y caused by] the "impact." In other words, the leaking fluid may have resulted from car accident. Agara does not point to any evidence where the inspector concluded that MBCL's lack of inspection or maintenance caused the accident.

Finally, Matt Graham, a certified Hybrid Master Technician, testified in detail about how a loss of power steering fluid would not cause a steering wheel to lock. Graham opined that the balding tire condition proximately caused Agara's injuries. He stated, "I believe it is highly probable that the only reason she lost control was [the] tires. Power steering does not do that."

While we agree that evidence of temporal proximity between MBCL's maintenance and inspection and Agara's accident may be somewhat relevant to causation, it is not more than a scintilla of evidence raising a genuine issue of material fact that MBCL proximately caused her injuries. *See Aleman v. Ben E. Keith Co.*, 227 S.W.3d 304, 311–12 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (affirming no-evidence summary judgment when employee produced no evidence of causation element of negligence claim against employer for personal injury). The evidence of causation is insufficient because Agara merely assumed that the proximity of time between the work performed by MBCL and her accident demonstrated proximate cause. *See Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 728 (Tex. 2003) (per curiam) ("[S]ome suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence"); *Seideneck v. Cal*

10

*Bayreuther Assocs.*, 451 S.W.2d 752, 755 (Tex. 1970) ("[W]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, such evidence is in legal effect no evidence . . . ."). The Texas Supreme Court has rejected relying on mere suspicion based on the timing of events as evidence of causation:

> Evidence of an event followed closely by manifestation of or treatment for conditions which did not appear before the event raises suspicion that the event at issue caused the conditions. But suspicion has not been and is not legally sufficient to support a finding of legal causation.

*Guevara v. Ferrer*, 247 S.W.3d 662, 668 (Tex. 2007). Because Agara did not establish that MBCL's acts or omissions were substantial factors in causing her injuries, the trial court's summary dismissal of Agara's negligence claim was not erroneous. *See Urena*, 162 S.W.3d at 552.

## C.   Breach of express and implied warranties

Agara contends that she raised a fact issue on all essential elements of her claims for breach of express and implied warranties. She asserts that MBCL breached its express and implied warranties by failing to check the level of power steering fluid, power steering condition, and power locking system operation. MBCL responds that Agara presented no evidence of defects in the power steering system or that the power steering fluid was low when Agara left MBCL.

To establish a claim for breach of an express warranty, Agara must show that (1) MBCL sold services to her; (2) MBCL made a representation; (3) representation

11

became part of the basis of the bargain; and (4) MBCL breached the warranty. *Franklin v. Banks*, No. 01-06-00818-CV, 2007 WL 1844525, at *4 (Tex. App.—Houston [1st Dist.] June 28, 2007, no pet.) (mem. op.) (citing *Sw. Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576 n.3 (Tex. 1991) (op. on reh'g)). The elements for a claim for breach of the implied warranty of good and workmanlike performance of services are: (1) the defendant sold services to the plaintiff; (2) the services consisted of the repair or modification of the plaintiff's existing tangible goods or property; (3) The defendant did not perform the services in a good and workmanlike manner; and (4) the plaintiff suffered injury. *See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 438–39 & n.3 (Tex. 1995); *see also Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987).

Our independent review of the summary-judgment record shows no evidence of any defects in the steering components when Agara left MBCL. Neither party disputes that MBCL agreed to conduct a limited inspection of Agara's vehicle. Nor does either party dispute that the power steering fluid level, the steering condition, and the power locking system operation were included in this inspection. The evidence shows that, among other things, MBCL inspected the power steering fluid level, the steering condition, and the power locking system operation. MBCL reported that these items passed inspection. Agara herself asserted that she did not notice any problems with her vehicle before she entered Interstate Highway 45. In

12

fact, she stated that her car was "running smooth." Agara has not provided evidence to the contrary. Her reliance on the reports after the accident attribute the possible cause of the fluid loss to the impact of the collision, not to deficient services by MBCL. Agara did not raise a fact issue proving that MBCL's breach of express or implied warranties, if any, caused her injury. *See Smith v. Radam, Inc.*, 51 S.W.3d 413, 416–17 (Tex. App.—Houston [1st Dist.] 2001, no pet.). Because there is no evidence that MBCL breached any warranties, the trial court did not err by granting MBCL's no-evidence motion and dismissing Agara's claims for breach of express and implied warranties.

We therefore overrule Agara's sole appellate issue.

## Conclusion

We affirm the judgment of the trial court.


Sarah Beth Landau
Justice

Panel consists of Justices Keyes, Lloyd, and Landau.