**Opinion issued January 23, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-23-00038-CV

————————————————

**DESSIE MARIA ANDREWS, Appellant**

**V.**

**DOYLE RUSSELL HAYMAN, JAMES HAYMAN, AND BOBBIE LAKOMIA, Appellees**

---

**On Appeal from the 126th District Court**
**Travis County, Texas[1]**
**Trial Court Case No. D-1-GN-22-000130**

---

**MEMORANDUM OPINION**

---

[1]     Pursuant to its docket equalization authority, the Supreme Court of Texas transferred this appeal to this Court. *See* Misc. Docket No. 22–9115 (Tex. Dec. 20, 2022); *see also* TEX. GOV'T CODE ANN. § 73.001 (authorizing transfer of cases); TEX. R. APP. P. 41.3.

Appellant, Dessie Maria Andrews, challenges the trial court's rendition of summary judgment in favor of appellees, Doyle Russell Hayman ("Russell"), James Hayman ("James"), and Bobbie Lakomia[2] ("Bobbie") (collectively, "appellees"), in her suit against appellees for breach of contract and tortious interference with an existing contract. In four issues, Andrews contends that the trial court erred in granting appellees summary judgment.

We affirm.

## Background

In her first amended petition, Andrews alleged that she had been living in a home in Austin, Texas for almost twenty-five years. The home was owned by Russell. According to Andrews, she and Russell had an agreement that she "would live in the home, keep it in good repair, treat it as her own, and remodel as she saw fit, at no expense to Russell." Russell received timely rental payments from Andrews, and Andrews took care of the home, "with the understanding that there would come a time when Russell would actually transfer title to the [home] in a fair and reasonable sales amount, taking into consideration all the contributions, payments and improvements made by" Andrews.

---

[2] Andrews sued "Bobbie Hayman." We note that, in her answer, Bobbie identifies herself as "Bobbie Lakomia," as does the trial court in its order granting summary judgment. Our style of the case is in accord with the trial court's order. *See Owens v. Handyside*, 478 S.W.3d 172, 175 n.1 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (clarifying style of case).

Andrews further alleged that she and Russell "had a relationship of trust," but she and Russell "never signed a formal contract because it was not deemed necessary considering the relationship of mutual trust, which only grew stronger over the years." "The few times that Russell increased [her rental] payments, Russell told [Andrews] what he needed, which [Andrews] dutifully paid, and when [Andrews] made repairs [to the home], for the most part, she informed [Russell] of the expenditures" so that he could take "a tax deduction." Andrews asserted that she and Russell agreed that "at some juncture" Russell would "transfer title" for the home to Andrews. Russell told Andrews that when he was ready to sell, he would "give her the price he wanted taking into consideration all her labor, contributions, and fidelity in performance for [twenty-five] years." It was understood that "when th[e] day came, [Andrews] would buy the home at that fair and equitable price and Russell would transfer title" to Andrews.

According to Andrews, in June 2018, Russell told her that he was "tired of the ever-increasing property taxes" and "he might be ready to sell." Andrews told Russell that "she would be responsible for the property taxes" and began paying them. Andrews assured Russell that "she would work on securing the funding to meet his price and assist in the transfer of the deed." Andrews "diligently planned and carried out a way to get the money to pay a fair and reasonable price," and Russell "extended the time to [Andrews] to secure the funds and financing."

3

On September 17, 2021, Andrews sent Russell an email, stating that "she was ready to close the deal and assist Russell in the transfer of the deed to [the] home." On November 15, 2021, Russell sent Andrews an email, stating: "I'm asking $350,000 for the ho[me]." (Internal quotations omitted.) On November 16, 2021, Andrews "accepted [the] price without haggling out of respect for the relationship and immediately emailed [Russell] confirmation that [she] would pay his price to transfer the deed" to the home. At some point, according to Andrews, she called Russell and "discussed the details and timing of the transfer of title and funds."

On November 24, 2021, Russell emailed Andrews, stating that he had talked to "the family," and they said he should be "committed for agreeing to transfer the title [of the home] for the price he had agreed to." (Internal quotations omitted.) "They told him he could get twice the price." Russell said "he was turning over the problem to J[ames] and Bobbie." But "[n]either J[ames] nor Bobbie was communicative."

Andrews alleged that in December 2021, she sent a check for $350,000 to Russell and a deed for Russell to sign. But James and Bobbie "command[ed] Russell to refuse payment and send it back." On January 3, 2022, Bobbie told Andrews that "the family committee had met and Russell was not selling [Andrews] the ho[me]." (Internal quotations omitted.) "J[ames] and Bobbie simply ganged up on Russell

4

and overthrew his free will and undermine[d] his ability to conduct his affairs and control his estate as he saw fit."

Andrews brought a claim against Russell for breach of contract[3] and requested that the trial court order Russell to accept Andrews's payment and "sign the deed [for the home] over to Andrews." Andrews brought a claim against James and Bobbie for tortious interference with an existing contract.

Appellees answered, generally denying the allegations in Andrews's petition and asserting certain affirmative defenses, including statute of frauds and lack of consideration.

Appellees then filed a combined no-evidence and matter-of-law motion for summary judgment on Andrews's claims for breach of contract and tortious interference with an existing contract. First, appellees argued that they were entitled to judgment as a matter of law on Andrews's claims because they could disprove at

---

[3]   Andrews also brought claims against Russell for "specific performance and imposition of constructive trust to prevent unjust enrichment," breach of the duty of good faith and fair dealing, breach of fiduciary duty, breach of implied duty, intentional infliction of emotional distress, mental anguish, and "refusal of payment and discharge of debt." These claims were later dismissed after Russell filed a motion to dismiss under Texas Rule of Civil Procedure 91a. *See* TEX. R. CIV. P. 91a. Additionally, Andrews, in her first amended petition, alleged claims against Russell for fraudulent inducement and unjust enrichment, but those claims were effectively nonsuited or voluntarily dismissed when Andrews filed her second amended petition. *See FKM P'ship, Ltd. v. Bd. of Regents Univ. of Houston Sys.*, 255 S.W.3d 619, 632 (Tex. 2008) ("In civil causes generally, filing an amended petition that does not include a cause of action effectively nonsuits or voluntarily dismisses the omitted claims as of the time the pleading is filed.").

least one element of Andrews's claims against them. Appellees also argued that they were entitled to judgment as a matter of law on Andrews's claims because they could establish the affirmative defenses of statute of frauds and lack of consideration. Additionally, appellees asserted that Andrews had no evidence of damages for her claims against appellees. Appellees attached certain exhibits to their summary-judgment motion.[4]

After appellees moved for summary judgment, Andrews did not file a response. Instead, she filed a second amended petition, alleging that she had lived in the home in Austin for twenty-five years, but Russell had the title to the home. Andrews "believed the agreement . . . which Russell and [she] had from the beginning was that [Andrews] would live in the home, keep it in good repair, treat it as [her] own, remodel it as [she] saw fit, and when Russell no longer wanted rental income, . . . he would sell it to [her] at a price he deemed fair." Andrews and Russell "never signed a formal contract because it was not deemed necessary, considering the relationship of mutual trust, which only grew stronger over the years." When

---

[4] Appellees served Andrews with a copy of their motion for summary judgment electronically through the electronic filing manager. On September 2, 2022, appellees filed a notice of hearing with the trial court, setting their motion for summary judgment for a hearing on October 10, 2022. Appellees also served Andrews with a copy of the notice of hearing on September 2, 2022 electronically through the electronic filing manager. Appellees' notice of hearing included a certificate of conference stating that appellees' counsel had conferred with Andrews about the hearing.

Russell increased Andrews's rental payments, Andrews paid. Andrews took care of the home like it was her own, and she believed that "there would come a time when Russell would actually transfer title to the [home], after a fair and reasonable sale price, taking into consideration all the contributions, payments, and improvements made by [Andrews]."

Andrews further alleged that in June 2018, Russell told her that he might be ready to sell the home. Andrews "asked him for some time to get the money together," but said that until then she "would be responsible for the property taxes." On September 17, 2021, Andrews sent Russell an email saying, "I am ready, let's parlay." (Internal quotations omitted.) On November 15, 2021, Russell sent Andrews an email, stating, "I'm asking $350,000 for the ho[me]." On November 16, 2021, Andrews "accepted [Russell's] price without haggling, out of respect for the relationship and immediately emailed [Russell] confirmation that [she] would pay his price to transfer the deed to [the] home." According to Andrews, the "offer and acceptance were in writing and the agreement was memorialized in a written email agreement which [she] believed was a binding and enforceable contract."

Andrews followed up the emails by calling Russell. According to Andrews, on the call, Russell and she discussed "the details and timing of the transfer of title and funds." Andrews "sent sample agreements to Russell." "There were no realtor fees, no pro-rated property taxes, no need for a title company, no need for title

7

insurance . . . [;] it was just a matter of [Andrews] paying the money[] and Russell signing the deed."

On November 24, 2021, Russell emailed Andrews, telling her that he had talked to "the family," and they said he should be "committed for agreeing to transfer the title [to the home] for the price [that] he had agreed to." (Internal quotations omitted.) By "[t]he family," Russell meant James and Bobbie—Russell's brother and sister-in-law, respectively. (Internal quotations omitted.) Andrews alleged that James and Bobbie told Russell "he could get twice the price he had asked." Russell told Andrews that he was "turning over the problem to" James and Bobbie. James and Bobbie were not communicative with Andrews.

"In an attempt to consummate the deal," Andrews sent a check for $350,000 to Russell and a deed for Russell to sign. But on January 3, 2022, Russell returned the payment to her. Also, on January 3, 2022, Bobbie told Andrews that "the family committee" had met and Russell was not going to sell Andrews the home. (Internal quotations omitted.) Andrews believed that "the family committee" included all appellees. (Internal quotations omitted.)

Andrews brought a claim against Russell for breach of contract, asserting that in November 2021, she and Russell "executed a valid and enforceable written agreement." According to Andrews, Russell "made a written offer with a specific price," which Andrews timely accepted. Russell agreed to accept $350,000 in

exchange for transferring the deed to the home to Andrews. Russell breached the agreement by refusing Andrews's payment and returning the documents she sent, which included a check for $350,000.[5] Andrews brought a claim against James and Bobbie for tortious interference with an existing contract, asserting that she and Russell had a valid existing contract—"both the long-running oral contract and the written contract agreed on" in November 2021. Andrews asserted that James and Bobbie knew about the contract and improperly induced a breach of contract between Russell and Andrews. According to Andrews, James and Bobbie willfully and intentionally interfered with Andrews's "oral and written contracts with Russell," which caused damage to Andrews. Andrews sought damages and "[e]quitable relief in the form of an order to convey title [in the home] to Andrews."

Subsequently, the trial court held a hearing on appellees' motion for summary judgment at which Andrews did not appear.[6] The trial court then granted appellees summary judgment on Andrews's claims against them for breach of contract and

---

[5] Andrews also brought claims, in her second amended petition, against Russell for adverse possession, "refusal of tender of payment discharged the obligation," and "abandonment of property." Later, Russell filed a Texas Rule of Civil Procedure 91a motion to dismiss Andrews's claims against him for adverse possession, "refusal of tender of payment discharged the obligation," and "abandonment of property." *See* Tex. R. Civ. P. 91a. After a hearing, the trial court dismissed Andrews's claims for adverse possession and "abandonment of property," and it held that it had previously dismissed Andrews's claim against Russell for "refusal of tender of payment discharged the obligation," which Andrews had tried to reassert in her second amended petition.

[6] No record was taken at the hearing.

tortious interference with an existing contract and awarded appellees attorney's fees. In its order granting summary judgment, the trial court found that appellees had established their affirmative defenses of statue of frauds and lack of consideration, thereby defeating Andrews's claims. Further, the trial court found that appellees had disproved at least one element of Andrews's claims for breach of contract and tortious interference with an existing contract. The Travis County District Clerk sent Andrews notice of the trial court's summary-judgment order.[7]

## Standard of Review

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In conducting our review, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference

---

[7] This summary-judgment order, which Andrews now challenges on appeal, at the time it was signed by the trial court, was an interlocutory order because Russell had filed counterclaims against Andrews and certain claims alleged by Andrews in her second amended petition remained pending when the trial court signed the summary-judgment order. As mentioned previously, Russell filed a motion to dismiss under Texas Rule of Civil Procedure 91a related to the claims in Andrews's second amended petition, and he filed a motion for summary judgment on his counterclaims against Andrews. On November 29, 2022, the trial court granted Russell summary judgment on his counterclaims against Andrews and granted his motion to dismiss Andrews remaining claims against him. *See OHK Global, Inc. v. Motaghi*, No. 01-21-00353-CV, --- S.W.3d ---, 2023 WL 3183320, at *3 (Tex. App.—Houston [1st Dist.] May 2, 2023, pet. denied) (noting interlocutory summary judgment order or other order that does not dispose of entire case becomes final when trial court subsequently enters order that disposes of all remaining parties and claims in case).

and resolve any doubts in the non-movant's favor. *Valence Operating*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215. If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

A party seeking summary judgment may combine in a single motion a request for summary judgment under the no-evidence standard with a request for summary judgment as a matter of law. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004). To prevail on a no-evidence summary-judgment motion, the movant must establish that there is no evidence to support an essential element of the non-movant's claim on which the non-movant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the non-movant to present evidence raising a genuine issue of material fact as to each of the elements challenged in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Hahn*, 321 S.W.3d at 524. A no-evidence summary-judgment may not be granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on the challenged elements in the motion. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists

when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (internal quotations omitted). The trial court must grant a no-evidence summary-judgment motion if the movant asserts that there is no evidence of one or more specified elements of the non-movant's claim on which the non-movant would have the burden of proof at trial and the non-movant fails to file a timely response or fails to produce summary-judgment evidence raising a genuine issue of material fact on each challenged element. *See* TEX. R. CIV. P. 166a(i); *Lockett v. HB Zachry Co.*, 285 S.W.3d 63, 67 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

To prevail on a matter-of-law summary-judgment motion, the movant must establish that no genuine issue of material fact exists and the trial court should grant judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a defendant moves for a matter-of-law summary judgment, he must either: (1) disprove at least one essential element of the plaintiff's cause of action, or (2) plead and conclusively establish each essential element of an affirmative defense, thereby defeating the plaintiff's cause of action. *See Cathey*, 900 S.W.2d at 341; *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). Once the movant meets its burden, the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. *See Siegler*,

899 S.W.2d at 197; *Transcon. Ins. Co. v. Briggs Equip. Trust*, 321 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The evidence raises a genuine issue of fact if reasonable and fair-minded fact finders could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

## Summary Judgment

In her first, second, third, and fourth issues, Andrews argues that the trial court erred in granting appellees summary judgment on her claims for breach of contract and tortious interference with an existing contract because she had a binding contract to buy the home based on her and Russell's emails, Russell breached the contract, and James and Bobbie tortiously interfered with the contract. Andrews further asserts that her email agreement with Russell about selling the home was "compliant with the statute of frauds" and she did not have notice that appellees had filed their summary-judgment motion or set it for a hearing.

An appellant must attack all independent bases or grounds that fully support the complained-of order or judgment. *See Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 423–24 (Tex. App.—Dallas 2009, no pet.); *Britton v. Tex. Dep't of Crim. Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.). If an independent ground fully supports the complained-of order or judgment, but the appellant assigns no error to that independent ground, an appellate court must

accept the validity of the unchallenged independent ground and thus any error in the grounds challenged on appeal is harmless because the unchallenged independent ground fully supports the complained-of order or judgment. *See Oliphant Fin.*, 295 S.W.3d at 423–24; *Britton*, 95 S.W.3d at 681; *see also In re A.K.P.*, No. 06-19-00075-CV, 2020 WL 465281, at *2 (Tex. App.—Texarkana Jan. 29, 2020, no pet.) (mem. op.) ("When an appellant fails to challenge an alternate basis for the appealed order, any error in the challenged basis for the order is rendered harmless." (internal quotations omitted)). The Texas Supreme Court has "repeatedly instructed that 'the courts of appeals may not reverse the [complained-of order or] judgment of a trial court for a reason not raised in a point of error.'" *Cont'l Carbon Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 14-11-00162-CV, 2012 WL 1345748, at *4 (Tex. App.—Houston [14th Dist.] Apr. 17, 2012, no pet.) (mem. op.) (quoting *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993)). An appellate court must affirm the complained-of order or judgment when an appellant challenges some but not all bases for the order or judgment. *See Miller v. Debo Homes, LLC*, No. 14-15-00004-CV, 2016 WL 5399507, at *3 (Tex. App.—Houston [14th Dist.] Sept. 27, 2016, pet. denied) (mem. op.).

Here, appellees moved for summary judgment, arguing, among other things, that they were entitled to judgment on Andrews's claims against them because they could establish the affirmative defense of lack of consideration. The trial court, in

its summary-judgment order, found that appellees were entitled to summary judgment on Andrews's claims against them because, among other things, appellees had established the affirmative defense of lack of consideration, thereby defeating Andrews's claims against them. Andrews, in her briefing, does not challenge appellees' assertion or the trial court's finding that appellees were entitled to summary judgment on Andrews's claims because appellees conclusively established their affirmative defense of lack of consideration.[8]

Because Andrews failed to challenge this independent ground supporting the trial court's summary-judgment ruling, we hold that the trial court did not err in granting appellees' summary judgment on Andrews's claims for breach of contract and tortious interference with an existing contract. *See, e.g.*, *Pallida, LLC v. Uballe*, No. 03-18-00365-CV, 2018 WL 6816680, at *4 (Tex. App.—Austin Dec. 28, 2019, no pet.) (mem. op.); *see also Heritage Gulf Coast Props., Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 653 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("If the appellant fails to challenge all grounds on which the judgment may

---

[8] Although Andrews is representing herself, she is held to the same standard as a licensed attorney and must comply with all applicable laws and rules of procedure. *See Tyurin v. Hirsch & Westheimer, P.C.*, No. 01-17-00014-CV, 2017 WL 4682191, at *1–2 (Tex. App.—Houston [1st Dist.] Oct. 19, 2017, no pet.) (mem. op.); *In re Estate of Taylor*, 305 S.W.3d 829, 837 (Tex. App.—Texarkana 2010, no pet.). "A pro se litigant is required to properly present [her] case on appeal, just as [she] is required to properly present [her] case to the trial court." *In re Estate of Taylor*, 305 S.W.3d at 837.

15

have been granted, the appellate court must uphold the summary judgment"); *Britton*, 95 S.W.3d at 681–82 ("If summary judgment may have been rendered, properly or improperly, on  a ground not challenged, the judgment must be affirmed." (internal quotations omitted)).

We overrule Andrews's first, second, third, and fourth issues.

## Conclusion

We affirm the order of the trial court.


Julie Countiss
Justice

Panel consists of Justices Goodman, Countiss, and Farris.