Ray FELKER and Felker Enterprises, Inc., Appellants,

v.

PETROLON, INC., Appellee.

No. 01-95-01081-CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 2, 1996.

Rehearing Overruled May 28, 1996.

---

James M. Bright, Houston, for Appellant.

Don A. Wetzel, Erik B. Walker, Woodlands, for Appellee.

Before HEDGES, DUNN and MIRABEL, JJ.

## OPINION

HEDGES, Justice.

This appeal deals with a breach of contract case in which plaintiff/appellee, Petrolon, Inc. (Petrolon), claimed that defendants/appellants, Ray Felker and Felker Enterprises, Inc. (Felker), violated a confidentiality provision of a settlement agreement. Following the jury's finding that Felker breached material terms of the agreement, the trial court entered judgment awarding damages to Petrolon.

In two points of error, Felker contends that there was no evidence to support (1) the submission of the question of breach to the jury and (2) the jury finding of breach. In his third point of error, Felker contends that the trial court erred in admitting telephone records and associated testimony because they were neither material nor relevant. We affirm.

## FACTS

### Background

Petrolon is a corporation which manufactures and sells automotive engine products. From 1978 to 1982, Petrolon marketed its products exclusively through a distribution system using multi-level marketers (MLM "distributors"), who purchased the products from Petrolon for resale to others. Petrolon's contract with the distributors reserved its right to change the marketing plan at any time. Felker was Petrolon's representative responsible for direct sales to the military.

In the late 1980s, Petrolon decided to begin direct sales to national retail chains and offered Petrolon's distributors the first opportunity to enter into agreements with the national accounts. When this effort proved unsuccessful, Petrolon decided to sell directly to national retail accounts. At a meeting of the principal MLM distributors in February of 1990, Petrolon announced this decision. Most, if not all, of the distributors who later sued Petrolon attended the meeting and heard the announcement. Petrolon also sent letters to all distributors informing them of its direct retail sales plan. To compensate distributors adversely affected by the direct sales, Petrolon established several programs. Three years after the February 1990 meeting, none of the distributors except appellants had voiced any opposition to the direct sales program or threatened to sue Petrolon.

Even before the announcement of the retail sales decision, the relationship between Petrolon and Felker had been difficult. Petrolon received numerous complaints from the military about Felker's performance. Felker failed to service the military stores as agreed. Felker threatened to sue both Petrolon and the military and complained to the state attorney general about the direct retail sales program. Ultimately, Felker sued Petrolon for causes of action relating to the direct sales program, whereupon Petrolon sued Felker for breach of the military contract. The lawsuits were consolidated in the trial court.

### The Settlement Agreement and Final Judgment

On September 9, 1992, which was to be the first day of trial, Felker and Petrolon entered into a settlement agreement. The agreement specified that Petrolon would pay Felker $450,000 in five equal annual installments of $90,000, but prohibited Felker "from disclosing in any manner the price, terms, or conditions or substance of the settlement agreement." The settlement agreement also specified that Felker was to "con-

fine any disclosure as to the outcome of this litigation or as to any settlement of this litigation by referring the party to the [district court] ... to obtain whatever judgment might be obtained from the court records."

Shortly after the settlement agreement was reached, the trial court entered a final judgment which contained findings of fact and conclusions of law that absolved Petrolon of any wrongdoing, concluded that Felker had no cause of action against Petrolon, and found that Felker had materially breached the terms of their distributor contract with Petrolon. Incorporating the nondisclosure language of the agreement, the judgment also enjoined Felker from disclosing in any manner the resolution of the parties' claims other than to refer an inquiring party to the judgment. There was no reference in the judgment of any payment by Petrolon to Felker.

On September 16, 1992, Petrolon paid the first installment of $90,000 to Felker. Soon after the settlement was reached with Felker and the first payment was made, nine other distributors filed suit against Petrolon alleging claims almost identical to Felker's. Petrolon did not make the second installment on September 16, 1993, but instead filed this cause, alleging that Felker had breached the settlement confidentiality provision and that as a consequence, no further sums were owed. Felker counterclaimed to collect the remaining $360,000. At trial, a jury concluded that Felker breached the terms of the settlement agreement by disclosing the contents or substance of the agreement. The trial court entered judgment in favor of Petrolon on the jury's finding, and awarded damages to Petrolon in the amount of $90,000 for breach of contract, plus interest and attorney's fees.

## LEGAL SUFFICIENCY

### Standard of Review—No Evidence

Felker complains that the trial court erred in overruling his motion for directed verdict

and submitting the question of breach to the jury because the evidence was legally insufficient to support its submission. He further complains that the trial court erred in overruling his motion for judgment n.o.v. because there was no evidence to support the jury's finding of breach. We analyze both points of error under a "no evidence" standard of review.

■ In reviewing "no evidence," either in the context of evidence in support of a jury finding or proper submission of a jury question, we consider only the evidence and *inferences* that tend to support the finding, and disregard all evidence and inferences to the contrary. *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992); *Neese v. Dietz*, 845 S.W.2d 311, 312 (Tex.App.—Houston [1st Dist.] 1992, writ denied).[1] If there is more than a scintilla of probative evidence to support the finding, a no evidence challenge fails. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987); *Mai v. Mai*, 853 S.W.2d 615, 618 (Tex.App.—Houston [1st Dist.] 1993, writ denied). When the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of the vital fact, it amounts to more than a scintilla of evidence, and the no evidence challenge must be overruled. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983).[2]

### Circumstantial Evidence

■ An ultimate fact may be established by circumstantial evidence. *State v. $11,014.00*, 820 S.W.2d 783, 785 (Tex.1991) (per curiam). "Circumstantial evidence is the proof of collateral facts and circumstances from which the mind arrives at the conclusion that the main facts sought to be established in fact existed." *Glover v. Davis*, 360 S.W.2d 924, 928 (Tex.Civ.App.—Amarillo 1962), *aff'd*, 366 S.W.2d 227 (Tex.1963). An

---

1. *See Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227–28 (Tex.1990) (applying the same standard to grant of a motion for judgment n.o.v.); *Harris County v. Demny*, 886 S.W.2d 330, 333 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (applying the same standard to denial of a motion for directed verdict).

2. Appellants urge this Court to also consider the evidence favorable to support possible conclusions other than breach by Felker. Because appellants have not raised a factual sufficiency challenge, we may not conduct such an analysis.

ultimate fact may be established by circumstantial evidence when the circumstances relied on are of such a character as to be reasonably satisfactory and convincing, and are *not* equally consistent with the nonexistence of the ultimate fact. *See Marshall Field Stores, Inc., v. Gardiner*, 859 S.W.2d 391, 401 (Tex.App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.).

## DISCUSSION

■ The central fact issue was whether Felker breached the confidentiality provision of the settlement agreement between Felker and Petrolon. Only one liability issue was submitted to the jury:

> Did any of the parties named below disclose contents or substance of the settlement agreement to any individual?
>
> Answer "yes" or "no" as to each Defendant.
>
> Ray Felker: <u>Yes</u>
>
> Felker Enterprises, Inc. <u>Yes</u>

In points of error one and two, Felker argues that the "data" Petrolon introduced "did not reach the level of being evidence" and therefore was "no evidence."

### Totality of the Circumstances

Felker's first argument is that the circumstantial evidence presented by Petrolon was just as consistent with an inference of non-breach as with an inference of breach. Felker argues that each piece of data, standing alone, could lead to other equally plausible inferences or conclusions than a breach of the agreement. Felker also claims that the evidence amounts to only "suspicion" or "surmise" of a breach, citing *Browning–Ferris, Inc. v. Reyna* for the proposition that suspicion linked to other suspicion is not the same as evidence. 865 S.W.2d 925, 927 (Tex.1993).

■ Initially, we disagree with Felker's methodology. In reviewing circumstantial evidence, we must look at the *totality* of the known circumstances rather than reviewing each piece of evidence in isolation. *Brinegar v. Porterfield*, 705 S.W.2d 236, 238 (Tex.App.—Texarkana), *aff'd*, 719 S.W.2d 558 (Tex.1986). Any evidence has probative value if it contributes to the proof of an issue.

*Id.* at 239. A single factor standing alone may be insufficient, but when joined by other factors constituting a significant whole, the combination can justify a conclusion. *Id.* To sustain a finding of fact based upon circumstantial evidence, it is not necessary to exclude beyond suspicion every other possible inference that could be drawn from the facts shown. *Green Light Co. v. Moore*, 485 S.W.2d 360, 363 (Tex.Civ.App.—Houston [14th Dist.] 1972, no writ). It is necessary to show only that one conclusion or inference is more probable than any other. *See $56,700 in U.S. Currency v. State*, 730 S.W.2d 659, 660 (Tex.1987); *Marshall Field Stores, Inc.*, 859 S.W.2d at 400.

In *Marshall Field*, the appellant's action for slander was based only on circumstantial evidence and inferences drawn from that evidence. 859 S.W.2d at 400. This Court found that the circumstantial evidence was *equally likely* to support a nonactionable theory of injury as it was likely to support an inference of actionable slander. *Id.* Therefore, the evidence was legally insufficient to support the jury's verdict for plaintiff on his slander claim. *Id.* Unlike *Marshall Field,* this is a case in which the circumstantial evidence most favorable to the jury verdict is *not equally* susceptible to conflicting inferences or theories. Although Felker suggests other possible inferences from the circumstances, we believe that the totality of the following circumstantial evidence supports the submission of the question of breach to the jury and the jury's finding on that question.

**Phone Conversation with Butler.** Felker's telephone communications with fellow distributor (and soon-to-be plaintiff) Don Butler provide evidence supporting the fact that Felker breached the confidentiality agreement. At trial, Felker agreed that one of the terms of the settlement agreement was that he would "in no way disclose the fact that there had been a settlement or the contents of it." He further acknowledged that he agreed to the settlement agreement as it was read in court. Felker admitted that, on September 9, 1992, the day of the settlement agreement, he called Butler in Colorado from a pay phone at or near the courthouse. Felker further admitted that

when he called Butler, he told Butler "that the case was over ... that [it] had been finalized." Felker conceded that it was possible that he used the word "settled." This is some evidence justifying submission of the issue of breach to the jury because it is more likely than not that a reasonable person would infer that, based on his use of "finalized" and "settled," Felker was referring to a favorable monetary settlement.

**Increased Communications.** Petrolon introduced evidence by deposition, written admission, direct questioning, and exhibits. Dr. Charles Walker, Ph.D., CPA, was hired by Petrolon to review the deposition testimony and telephone records. He was asked to use his expertise in statistics, economics, and accounting to examine the pattern of the communications between the distributors and determine whether, in his opinion, there had been a violation of the confidentiality agreement by Felker.

The additional circumstantial evidence tending to support the submission of the issue to the jury as well as the jury finding consists of the following: Butler admitted that he had not yet purchased a plane ticket to go to Houston for the trial which was to begin that day. Telephone records reveal that Butler tried to call Felker at his home in Corpus Christi earlier that same day, even though Butler supposedly knew that Felker and his family were in Houston for the trial. The records also reveal that Butler called Felker's hotel room in Houston that same night, and spoke for 11 minutes. Within minutes after the call to Felker, Butler called two other distributors, Timothy Langdon and Weldon Reynolds. Butler spoke with Reynolds the next day (Thursday), and then called Gordon Ginn, Felker's attorney, on Friday morning and talked for over an hour and a half.

Langdon also called Reynolds, and tried to reach Ginn as well. Over the weekend, several more calls occurred between Butler, Felker, Langdon, and Reynolds. On Monday, Langdon had an hour telephone call with Ginn.[3] Langdon then called another distributor, Silas Crees, and asked him to join a lawsuit he and other distributors had decided to file against Petrolon.

A second round of plaintiffs consisted of Petrolon's distributor management team: Gene Mason, Elzie Priest, and Richard Liming. Phone records indicated a flurry of phone calls between these other distributors, who had no history of such frequent communications, immediately after the settlement was reached. Liming called Felker late one night, less than two weeks after the Felker–Butler call. Liming called Mason and Priest the same night.[4] Phone records revealed that lengthy conference calls began between Liming (in California), Priest (in Oklahoma), and Mason (in Dallas). Dr. Walker testified that Liming, Priest, and Mason went to Corpus Christi to meet with attorney Ginn less than two weeks after Liming's call to Felker. Felker argues that this evidence gives rise to an equally probable inference that the phone calls took place because these distributors regularly telephoned each other to talk about products and sales. This inference is weakened to less than equal status by the coincidence of timing (immediately after the settlement) as well as the retaining of Ginn and the filing of the lawsuits.

**Attorney Selection.** Within months after the settlement, all the above distributors had signed fee agreements with Ginn to represent them in their individual suits against Petrolon, even though most of them had had no previous dealings with Ginn. Moreover, none of the distributors lived in Ginn's home city and state. Their allegations against Petrolon were nearly identical to those alleged in Felker's suit. They retained Ginn and filed suit without ever examining the judgment of the court in Felker's case.[5]

3. Felker's attorney, Gordon Ginn, resided in Corpus Christi, where none of the distributors lived.

4. Mason and Priest specifically admitted learning of the settlement agreement.

5. Appellants argue that it is possible that the distributors selected Ginn as their attorney be-
cause of his experience in handling Felker's case. This inference is unlikely considering the fact that, had the distributors examined the final judgment in Felker's case to determine what happened, they would have thought Felker had lost. It is far more probable that they already knew the outcome (i.e., a settlement favorable to Felker).

**Lawsuits Filed.** In addition to the admissions and increased communications, other events happening after the settlement support an inference that the other distributors knew the terms of the settlement. After the numerous phone calls that occurred between Felker and the other distributors and among the distributors themselves, many distributors decided to sue Petrolon over the direct retail sales agreement. This decision was made just five days after the settlement agreement,[6] and despite the fact that no distributor other than Felker had ever complained to Petrolon or threatened litigation in the two-and-a-half years since the retail decision was announced.[7] It is especially pertinent to note that anyone reading the trial court's judgment would assume that Petrolon, and not Felker, had prevailed in the breach of contract case.[8]

Petrolon's expert, Dr. Walker, analyzed the telephone records of the parties for calls made both before and after the settlement. He compiled and organized the calls in date and time order, by originating party, and from party-to-party, and looked for patterns distinct from previous calls among the distributors. He also examined the deposition testimony and the documents produced in the lawsuit. After an extensive analysis of the records and the direct and deposition testimony, Dr. Walker concluded that Felker breached the confidentiality agreement, and that the initial breach most likely occurred on September 9, 1992, in the calls between Felker and Butler.

We find that the most probable inference arising from the total circumstantial evidence is that Felker breached the confidentiality provision of the settlement agreement; any other inference is not equally probable. Because we find that the circumstances relied on by Petrolon to prove breach of the agreement are not equally consistent with nonbreach, and amount to more that mere surmise or suspicion, we conclude that the evidence was legally sufficient to uphold the submission of the breach issue to the jury and the jury's finding on that issue.

## Reasonable Minds May Differ

 Felker also asserts that in order to be considered as "some" evidence, the Court must be persuaded that reasonable minds could *not* differ on the matter. Appellants argue that because the circumstances could lead reasonable minds to different conclusions about the fact issue in this case, the circumstances do not constitute any evidence.

Felker has stated the *inverse* of the rule regarding "no evidence" points of error. When the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of the vital fact, it amounts to more than a scintilla of evidence, and the no evidence challenge must be overruled. *Kindred,* 650 S.W.2d at 63. Because appellants concede that reasonable minds can differ in this case, the judgment on the verdict must be affirmed.

## Admission of Expert Testimony

 Appellants assert, for the first time on appeal, that Dr. Walker's testimony should not have been admitted because it was not based on scientific data. Appellants made no objection to the substance of Dr. Walker's testimony.[9] Appellants' failure to

6. The settlement agreement with Felker was made in September of 1992. Petrolon announced that it would begin direct sales to national retail accounts at a meeting of the principal distributors in February of 1990. None of the distributors except Felker voiced any opposition to direct sales at or until three years after that meeting. Most, if not all, of the distributors who later sued Petrolon attended that meeting. Petrolon also sent a letter to all distributors making the same announcement.

7. Ron Flash, president of Petrolon, and Dennie Scott, Petrolon's executive in charge of distributors, both testified that no complaint or threat of suit regarding the retail sales had ever been made, formally or informally.

8. Although the settlement agreement terms involved a payment of $450,000 by Petrolon to Felker, the final judgment in the breach of contract case made no mention of any payments by Petrolon. Rather, the final judgment recited that Petrolon had not engaged in any wrongdoing and that Felker had materially breached the contractual obligations owed to Petrolon.

9. Appellants' only objection to Dr. Walker at trial was that he had not been properly designated according to the court's scheduling order. The court overruled that objection, citing cases which hold that when a trial is reset, as this one was, scheduling order deadlines are no longer in effect. Appellants do not challenge this ruling on appeal.

timely object to Dr. Walker's testimony waives any error. *See Marling v. Maillard,* 826 S.W.2d 735, 739 (Tex.App.—Houston [14th Dist.] 1992, no writ).

## Conclusion

When viewed in the light most favorable to the nonmovant, we find that the circumstantial evidence in this record has sufficient probative force to support an inference that Felker breached the agreement. Accordingly, we hold that the trial court correctly submitted the issue of breach to the jury, and we uphold the jury's finding.

We overrule points of error one and two.

## ADMISSIBLE EVIDENCE

In point three, appellants contend that the trial court·erred in admitting telephone records and testimony regarding those records because they were neither material nor relevant.

### Standard of Review

The admission and exclusion of evidence is within the sound discretion of the trial court. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). For the admission or exclusion of evidence to constitute reversible error, an appellant must show (1) that the trial court committed error, and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *McCraw v. Maris,* 828 S.W.2d 756, 757 (Tex.1992); *Marcuz v. Marcuz,* 857 S.W.2d 623, 625 (Tex.App.—Houston [1st Dist.] 1993, no writ); TEX. R.APP.P. 81(b)(1).

### Telephone Records

Relevant evidence is defined by rule 401 of the Texas Rules of Civil Evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.CIV.EVID. 401. We find that the telephone records and the testimony interpreting them meet this definition.

We have held that the telephone calls between Felker and Butler, together with the telephone calls among the distributors, are part of the evidence supporting submission of the issue of breach and the jury finding. Clearly the telephone records themselves and Dr. Walker's interpretation of them are relevant to this issue. The trial court did not err in admitting the evidence. In light of this finding, a harm analysis is not necessary.

We overrule point of error three.

We affirm the judgment of the trial court.