Opinion issued February 1, 2024



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00430-CV

————————————

**ROCIO MEDINA REYES, INDIVIDUALLY AND ON BEHALF OF HER DAUGHTER, LILIA ELIZABETH RODARTE, Appellant**

**V.**

**MUKERJI LAW FIRM AND SAM K. MUKERJI, INDIVIDUALLY, Appellees**

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-08248**

---

## MEMORANDUM OPINION

Rocio Medina Reyes, individually and on behalf of her minor daughter, Lilia Elizabeth Rodarte (Reyes), appeals the trial court's summary judgment in favor of the Mukerji Law Firm and Sam K. Mukerji (Mukerji) on her claims of civil barratry

and civil conspiracy.  In three issues, Reyes contends that the trial court erred in considering, and not striking, Mukerji's late-filed summary judgment evidence and in granting Mukerji's combined motion for traditional and no-evidence summary judgment.

We affirm.

### Background

On November 2, 2019, a vehicle struck and damaged Reyes's sedan.  Reyes and her minor daughter were in the vehicle at the time of the collision.  Neither reported any injuries to the officer on the scene nor sought immediate medical attention.  The at-fault driver received a citation and provided his liability insurance information.

The following week, Reyes drove by Fix My Car Collision & Mechanical, LLC, a vehicle repair shop, and stopped to obtain a repair estimate.  Fix My Car's representative, Jonathan Castellanos, told Reyes that she would need to leave her car with them because they were too busy to provide an estimate immediately.  Castellanos also called Prestige Chiropractic, LLC to schedule an appointment for Reyes and her daughter for their post-collision pain.  According to Reyes, neither she nor her daughter discussed any pain with Castellanos, nor did they ask him to schedule an appointment with Prestige.

The next day, Reyes called Castellanos to obtain the repair estimate and to cancel her appointment with Prestige because she "didn't need to go." Castellanos told Reyes that he did not have an estimate ready yet and for her to call Prestige to cancel the appointment herself. Reyes called Prestige to cancel—but ultimately ended-up rescheduling the appointment for the following week.

According to Reyes, when she arrived for the appointment, someone at Prestige presented her with a set of documents to read, fill and sign—all of which she believed were related to the chiropractic treatment. But within the stack of papers was a contingent fee contract and power of attorney, written in English, engaging Mukerji as her attorney. Reyes does not speak or read English fluently. She signed the contracts, on behalf of herself and her daughter, believing they were related to their medical treatment.

According to Reyes, she unwittingly retained Mukerji to represent her and her daughter for any claims related to the collision. Reyes maintains that she never asked anyone, particularly Prestige or Fix My Car, for an attorney referral. She further asserts that no one at Prestige translated the contracts or discussed any of the paperwork with her or her daughter. Mukerji did not sign the contracts and they remain undated.

3

The next day, Martha Sosa, an intake specialist at the Mukerji Law Firm, received the contracts from Prestige with Reyes's signature. After receiving the contracts, Sosa emailed Reyes with English versions of Authorizations for Release of Medical Information for signature. Reyes signed the forms and emailed them to Sosa, mistakenly believing that she was returning them to Prestige. Because Reyes recognized the word "medical" in the title of the forms, she thought they pertained to the chiropractic treatment.

Reyes claims she first learned that she had entered into an attorney-client relationship with Mukerji approximately one week later, when she called the at-fault driver's insurance company to check on the status of her claim. The insurance representative told Reyes that they could not speak because she was represented by Mukerji.

Reyes immediately called Mukerji to terminate the attorney-client relationship. The following month, Reyes returned to Fix My Car to recover her vehicle. According to Reyes, they presented her with a $3,138.45 invoice for "fraudulent and unauthorized repairs." Fix My Car "refused to return her vehicle . . . and informed her that she would have to pay approximately $1[,]500.00 for the vehicle to be released to her." Fix My Car never returned Reyes's vehicle and sold it without her permission in June 2020.

4

Reyes sued Mukerji, Fix My Car, and Prestige.[1]  As to Mukerji, Reyes alleged claims for civil barratry, civil conspiracy, and vicarious liability.[2]  Mukerji filed a general denial and did not raise any affirmative defenses.

Mukerji later filed a combined motion for traditional and no-evidence summary judgment, seeking dismissal of all Reyes's claims.  After Reyes responded, Mukerji filed a reply with evidence on the eve of the summary judgment hearing.  Reyes moved to strike Mukerji's summary judgment evidence as being untimely and violative of Rule 166a(d) of the Texas Rules of Civil Procedure.

At the summary judgment hearing, the trial court stated that it would take Reyes's motion to strike under advisement.  It also suggested that Mukerji file a motion for leave for the late-filed evidence to be considered—which Mukerji did.

Four days later, the trial court granted summary judgment without any elaboration.  The record does not reflect that the trial court ever ruled on Reyes's motion to strike or Mukerji's motion for leave.  The trial court subsequently incorporated its summary judgment into a final judgment.  Reyes now appeals from that final judgment.

---

[1]  After Reyes filed suit, Fix My Car ceased operations and Harris County Collision & Mechanical began operating in its place.  Reyes then added Harris County Collison & Mechanical as a defendant and obtained a default judgment against them, Fix My Car, and Prestige.

[2]  Reyes later dropped her claim for vicarious liability and replaced it with one for respondeat superior, alleging that the Mukerji Law Firm was liable for the acts and omissions of its attorneys and employees.

## Late-Filed Summary Judgment Evidence

Reyes's briefing for her first issue is hardly a model of clarity. It does not contain a "clear and concise argument" to support her contentions or "appropriate citations to authorities and to the record," as required by the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 38.1(i).

However, as our supreme court has instructed, "[w]e generally hesitate to turn away claims based on waiver or failure to preserve the issue[, and] we . . . construe briefing "reasonably, yet liberally, so that the right to appellate review is not lost by waiver." *Weekley Homes, LLC, v. Paniagua*, 646 S.W.3d 821, 826–27 (Tex. 2022) (internal citations omitted). "Simply stated, appellate courts should reach the merits of an appeal whenever reasonably possible." *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008). Accordingly, a party's briefing "is sufficient if it directs the attention of the appellate court to the error about which [the] complaint is made." *Weekley Homes*, 646 S.W.3d at 827 (internal quotations omitted); *see Sussex Council of Co-Owners v. Wang*, No. 01-22-00567-CV, 2023 WL 5208042, at *5 (Tex. App.—Houston [1st Dist.] Aug. 15, 2023, no pet.) (mem. op.).

When we liberally construe the briefing for Reyes's first issue in accordance with these principles, we can fairly ascertain Reyes's argument to be that the trial court erred in overruling her motion to strike Mukerji's late-filed summary judgment

evidence and in considering the late-filed evidence. We address each contention in turn.

First, nothing in the record shows the trial court made any ruling on Reyes's motion to strike. In the absence of a ruling by the trial court denying Reyes's motion to strike Mukerji's late filed summary judgment evidence, Reyes's complaint about the trial court doing so is not properly before us. *See* TEX. R. APP. P. 33.1(a)(2)(A).

Next, the record does not reflect a ruling on Mukerji's motion for leave. Generally, if nothing appears in the record to indicate that leave of court was granted, it is presumed the trial court did not consider any late-filed summary judgment evidence. *Ramirez v. Sanchez*, No. 01-21-00417-CV, 2023 WL 2919545, at *7 (Tex. App.—Houston [1st Dist.] Apr. 13, 2023, no pet.) (mem. op.) (citing *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996)). But that presumption is not absolute. *Id*.

"[C]ourts should examine whether the record affirmatively indicates" that the late filing was "accepted or considered." *B.C. v. Steak N Shake Ops., Inc.*, 598 S.W.3d 256, 260 (Tex. 2020) (internal quotations omitted). That indication may arise from "a separate order, a recital in the summary judgment, or an oral ruling contained in the reporter's record of the summary judgment hearing." *Id*. For example, a trial court's recital in a summary judgment that it generally considered the evidence, without any limitation, is an "affirmative indication" that it considered

7

late-filed evidence and "overcomes the presumption that the court did not consider it." *Id.* at 261.

Here, the record contains no affirmative indication that the trial court considered Mukerji's late-filed evidence. Indeed, the trial court's summary judgment order contains specific language. It expressly states the trial court considered only Mukerji's "Traditional Motion and No-Evidence Motion for Summary Judgment, Plaintiff's Response thereto, and the argument of counsel." Neither the summary judgment order nor the final judgment indicates that the trial court also considered Mukerji's summary judgment reply or any evidence at all— much less the late-filed evidence attached to Mukerji's reply.

Accordingly, because the trial court never ruled on Reyes' motion to strike, and the record does not affirmatively indicate that the trial court considered Mukerji's late-filed evidence—Reyes's complaint about the trial court doing so is also not properly before us. *See* TEX. R. APP. P. 33.1(a)(2)(A).

We overrule Reyes's first issue.

## Summary Judgment

In her second and third issues, Reyes contends the trial court erred in granting Mukerji's combined motion for traditional and no-evidence summary judgment on her civil barratry and civil conspiracy claims.

### A. Standard of Review

We review a trial court's summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When a party moves for both a traditional and no-evidence summary judgment, we first review the trial court's summary judgment under the no-evidence standard of review. *Spencer v. GC Servs. Ltd. P'ship*, No. 01-12-00159-CV, 2013 WL 1908160, at *4 (Tex. App.—Houston [1st Dist.] May 7, 2013, pet. denied) (mem. op.) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). If the trial court properly granted the no-evidence motion, we do not consider the arguments raised in the traditional summary judgment motion. *Id*.

To prevail on a no-evidence motion for summary judgment, the movant must demonstrate that no evidence supports an essential element of the non-movant's claim on which the nonmovant would have the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the nonmovant to present some probative evidence raising a genuine issue of material fact as to each of the elements

specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Hahn*, 321 S.W.3d at 524.

"The trial court must grant the [no-evidence] motion unless the nonmovant produces more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements." *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 376 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). More than a scintilla of evidence exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (internal quotations omitted).

However, "when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Ford Motor*, 135 S.W.3d at 601.

In applying this standard, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). And we may consider both direct and circumstantial evidence. *Ford Motor*, 135 S.W.3d at 601. When the trial court's summary judgment does not state the basis for the court's decision, we must uphold the summary judgment if any of the

theories advanced in the motion are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

We now apply these principles to the no-evidence summary judgment on Reyes's claim for civil barratry.

## B. Civil Liability for Barratry

"Barratry is the solicitation of employment to prosecute or defend a claim with intent to obtain a personal benefit." *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 n.2 (Tex. 1994); *Nguyen v. Watts*, 605 S.W.3d 761, 773 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). Barratry is also a criminal offense under Texas Penal Code section 38.12. *See* TEX. PENAL CODE § 38.12.

Under Penal Code section 38.12(a), a person commits barratry when, "with intent to obtain an economic benefit, the person" solicits employment, in person or by telephone, for himself or for another; pays or offers to pay third parties to solicit employment; or accepts or agrees to accept money or anything of value to solicit employment. *See id.* § 38.12(a)(2), (4), (6).

Under section 38.12(b), a person commits the offense of barratry if the person is a professional who knowingly accepts employment within the scope of their license that results from the solicitation of employment in violation of subsection (a). *Id.* § 38.12(b)(3).

11

Section 82.0651 of the Texas Government Code provides a private right of action for barratry for a client or person solicited by conduct that violates Penal Code section 38.12(a) or (b) *or* Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct. *See* TEX. GOV'T CODE § 82.0651(a), (c); *Gandy v. Williamson*, 634 S.W.3d 214, 230 (Tex. App.—Houston [1st Dist.] 2021, pet. denied). Here, Reyes did not allege any violation of Disciplinary Rule 7.03.

Under Government Code section 82.0651(a), a person "may bring an action to void a contract for legal services that was procured as a result of conduct violating Section 38.12(a) or (b) of the Penal Code." TEX. GOV'T CODE § 82.0651(a). Section 82.0651(b) then provides a remedy of damages, civil penalties, and attorneys' fees to the prevailing party. *See id.* § 82.0651(b).

Under section 82.0651(c) of the Government Code, a person solicited by conduct that violates section 38.12(a) or (b) of the Penal Code, and who did not enter into a contract as a result of that conduct, may also file a civil action against any person who committed barratry—and upon prevailing, may recover a $10,000 penalty, and actual damages caused by the barratry, as well as attorney's fees. *Id.* § 82.0651(c). The legislature has mandated that this statute "be liberally construed and applied to promote its underlying purposes, which are to protect those in need of legal services against unethical, unlawful solicitation and to provide efficient and economical procedures to secure that protection." *See id.* § 82.0651(e).

### 1.     Nature of Reyes's Live Claims

As described above, the trial court broadly granted summary judgment as to all of Reyes's claims. Reyes generally alleged civil barratry liability under Government Code section 82.0651, but quoted the statutory language that she was relying on. Specifically, Reyes pleaded that the statute "allows a person who *was solicited by* conduct violating the Texas Penal Code or the Texas Disciplinary Rules of Professional Conduct prohibiting barratry to sue *any person who committed barratry* and recover damages, civil penalties and attorney's fees." (Emphasis added) (internal quotations omitted).[3]

This quoted language appears *only* in subsection (c) of the statute.[4] We therefore construe Reyes's claim for civil barratry liability to be based on section 82.0651(c) of the Government Code. It was the only theory of civil barratry liability before the trial court for purposes of this summary judgment. *See, e.g.*, *MedStar Funding, LC, v. Willumsen*, 650 S.W.3d 809, 816 (Tex. App.—Houston [14th Dist.] 2022, no pet.); *Luna v. Gunter Honey, Inc.*, No. 09-05-207-CV, 2005 WL 3490126, at *1 (Tex. App.—Beaumont Nov. 17, 2005, pet. denied) (mem. op.).

---

[3]     Mukerji did not specially except to Reyes's live pleading. TEX. R. CIV. P. 91.

[4]     "A person who was solicited by conduct violating Section 38.12(a) or (b), Penal Code . . . may file a civil action against any person who committed barratry." TEX. GOV'T CODE § 82.0651(c).

## 2. The Trial Court Did Not Err in Granting Mukerji's No-Evidence Summary Judgment

As noted above, section 82.0651(c) of the Government Code states:

> (c) A person who was solicited by conduct violating Section 38.12(a) or (b) [of the] Penal Code . . . regarding barratry by attorneys . . . but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry.

TEX. GOV'T CODE § 82.0651(c).

The civil barratry statute does not define the term "solicit." This Court, however, has construed subsection (c) to require proof of "not only a violation of the specific Penal Code or Disciplinary Rule provisions," but also that the claimant was "solicited by the prohibited conduct." *Nguyen*, 605 S.W.3d at 777 (internal quotations omitted). Civil liability for barratry in this case therefore requires that the claimant be solicited by prohibited conduct—i.e., a violation of Penal Code section 38.12(a) or (b).[5] *Id.*

In *Nguyen*, the appellants based their civil barratry claims on the unauthorized filing of presentment forms falsely claiming they were represented by counsel and

---

[5] This is true even for civil barratry claims brought under section 82.0651(a). *See Gandy v. Williamson*, 634 S.W.3d 214, 234 (Tex. App.—Houston [1st Dist.] 2021, pet. denied) (noting that appellants, who brought civil barratry claims under section 82.0651(a), were required to show "improper solicitation to prevail on their civil barratry claims"); *Tex. Law Shield v. Crowley*, 513 S.W.3d 582, 590 & n.6 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (explaining that solicitation is relevant for claims brought under section 82.0651(a), and based on allegations in petition, section 82.0651(a) "require[d] proof that each contract was obtained as a result of a paid solicitation").

14

entitled to settlement proceeds. *Id.* at 776. Appellants argued the unauthorized filing constituted "actionable conduct" in violation of section 38.12(a) and established they were solicited by the prohibited conduct. *Id.*

This Court disagreed with appellants broad interpretation of "solicited by" in Government Code section 82.0651(c) because it improperly equated that term with "any conduct violating Texas Penal Code § 38.12(a)."[6] Instead, the *Nguyen* court construed "solicited by" to mean that "a private right of action [for barratry] requires the claimant [be] solicited by the violative conduct" in an effort to gain business. *Id.* at 778–79. Specifically, this Court held that "solicited by" in section 82.0651(c) "should be construed to mean [that] a person has experienced a prohibited communication directed toward him or her as a prospective client by or on behalf of an attorney in an effort to gain employment." *Id.* at 779.

Accordingly, the *Nguyen* court held that the mere filing of presentment forms alone did not support a claim for civil barratry under section 82.0651(c)—because the filing alone was not a communication directed toward the appellants and they were not solicited by the filing. *Id.*

---

[6] *Nguyen v. Watts*, 605 S.W.3d 761, 777 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (noting that if legislature wanted violations of relevant Penal Code and Disciplinary Rule provisions to be "coextensive with a right of private action without requiring the plaintiff to be 'solicited by' the violation," it would not have required "plaintiffs to be 'solicited by' the violative conduct as a qualifying element of recovery").

15

Here, Mukerji asserted in its summary judgment motion that Reyes provided no evidence Mukerji violated section 82.0651 of the Government Code. Mukerji argued that Reyes did not demonstrate "Mukerji or anyone acting on behalf of Mukerji personally solicited employment, in person or by telephone, for themsel[ves] or for another or that they paid or offered payment (or anything of value) to third parties to solicit employment."

We construe this as a no-evidence challenge to the "solicited by" element of Reyes's civil barratry claim under section 82.0651(c). Thus, the burden shifted to Reyes to produce evidence raising a fact issue as to this challenged element. *See Tamez*, 206 S.W.3d at 582. Based on the *Nguyen* court's interpretation of "solicited by" in section 82.0651(c), it was therefore Reyes's burden to present more than a scintilla of evidence that she "experienced a prohibited communication directed toward . . . her as a prospective client *by or on behalf of an attorney* in an effort to gain employment." *Nguyen*, 605 S.W.3d at 779 (emphasis added).

### a. *No evidence of any direct solicitation*

Reyes testified that she found Fix My Car on her own and Castellanos made an appointment for her at Prestige while she was sitting in his office. She confirmed that Castellanos never mentioned Mukerji's name to her, gave paperwork or "business cards or contact information" for an attorney, nor "conveyed to [her] or told [her] that he was working on behalf on any attorneys." And that Castellanos

16

gave her the number for Prestige, which she called to reschedule her appointment. Reyes further testified that when she was at Prestige, the woman who gave her the stack of forms to sign worked for Prestige, not Mukerji.

Reyes also provided conflicting testimony as to how Mukerji "came to know about [Reyes]," and how Mukerji obtained the signed contracts. But Reyes offered no evidence that Mukerji directed any communication towards Reyes in order to gain employment—and there is no evidence that Mukerji had any contact with Reyes prior to her signing the engagement contracts.

Indeed, Reyes testified that she "never met Sam Mukerji or any employee of the Mukerji Law Firm." And that she "never spoke to any employee of the Mukerji Law Firm prior to terminating their services," and "never personally visited the Mukerji Law Firm." Reyes also "did not mail, email, fax, or personally deliver any contracts to Mukerji Law Firm."

According to Reyes, the only direct communication she had with Mukerji occurred *after* she signed the engagement contracts. The first time was when Sosa, the firm's intake specialist, emailed medical authorizations to Reyes. Sosa testified that she did not know how Reyes got the contracts. Sosa simply did the intake and noted Prestige was the referral source. As part of the intake, Sosa stated that she emailed Reyes the medical authorizations at the email address provided and that Reyes emailed the signed copies back to her. The only other direct communication

17

was when Reyes called Mukerji to terminate the attorney-client relationship. Reyes confirmed that Mukerji did not charge her anything and no one paid her to sign the contracts retaining Mukerji.

Considering all of this, and the record as a whole in a light most favorable to Reyes, we conclude there is no genuine issue of material fact that Mukerji directly solicited Reyes. We thus hold there is no probative evidence that Reyes experienced any prohibited communication, directed toward her as a prospective client, *by Mukerji*. *See* TEX. GOV'T CODE § 82.0651(c).

### b. *No evidence of solicitation on behalf of Mukerji*

We next turn to Reyes's contention that the "cumulative force" of "incriminating" circumstantial evidence raises genuine issues of material fact as to whether Fix My Car or Prestige acted on behalf of Mukerji in committing barratry. "[C]ircumstantial evidence is the proof of collateral facts and circumstances from which the mind arrives at the conclusion that the main facts sought to be established in fact existed." *See Felker v. Petrolon, Inc.*, 929 S.W.2d 460, 463 (Tex. App.— Houston [1st Dist.] 1996, writ denied) (internal quotations omitted). To demonstrate an ultimate fact based upon circumstantial evidence "it is necessary to show that only one conclusion of inference is more probable than any other." *Id.* at 464.

Here, Reyes relies on her own testimony that: (1) she did not directly contact Mukerji; (2) she did not authorize Mukerji to represent her at any point to pursue

18

claims related to the accident; (3) she did not ask for a referral to an attorney or to Mukerji; and (4) she never spoke to anyone, including Mukerji, about representation by Mukerji.

Reyes also points to evidence of what she contends was an "ongoing, mutually benefitting business relationship [between Mukerji and] Prestige in which they shared clients and referred clients to each other." It includes Mukerji's testimony that the Mukerji Law Firm had clients that were "currently being treated by . . . Prestige Chiropractic," that "whoever is talking to a new client" may recommend Prestige to the client for chiropractic treatment, and that Prestige sometimes sends clients to Mukerji. And Sosa's testimony that Mukerji "send[s] a lot of clients to Prestige" and that they "refer patients to [the Mukerji Law Firm] to help them with their legal matters."

Reyes further relies on testimony by Jeimmy Galindo, Mukerji's business development manager and case manager, that she "bring[s] in business . . . from medical providers" by "send[ing] business to them, and they send business back to us sometimes," and that Prestige is one of the medical providers that "sends patients . . . for legal services" and "provides letters of protection to medical providers" when they are representing "clients . . . being treated by Prestige," and that Prestige will send the client's medical bills to Mukerji. Additionally, Reyes points to evidence

19

that Mukerji paid a total of $1,044,419.00 to Prestige from January 2017 through May 2021—but without specification of what the payments were for.

According to Reyes, taken together, the cumulative force of this circumstantial evidence is more than a scintilla of evidence that Mukerji, Prestige, and Fix My Car worked together to get Reyes to retain Mukerji—and that Mukerji, Prestige, and Fix My Car "had intent to obtain an economic benefit, as this [having Reyes retain Mukerji] would promote their mutual and respective businesses and make a profit."

As Reyes concedes by her argument, none of this alone is probative evidence that Fix My Car or Prestige were soliciting clients, specifically Reyes, at Mukerji's behest or did so at Mukerji's request or with its knowledge. The existence of a referral relationship between Mukerji and Prestige does not by itself demonstrate that the two had an agreement for Prestige to solicit clients for Mukerji—Prestige is one of many medical providers that Mukerji recommends to its clients.[7] And the payments by Mukerji to Prestige also do not alone establish the existence of an agreement for Prestige to solicit clients, Reyes specifically, for Mukerji. Indeed, payments dating back to 2017 cannot logically be payments for soliciting Reyes in 2019.

---

[7]   Sam Mukerji testified that his firm works "with about 100 different chiro[practors] in the Greater Houston area."

20

We must, however, review the totality of the known circumstances presented rather than just each piece of circumstantial evidence in isolation. *Id.* In that regard, an inference is not reasonable when it is premised on mere suspicion—"some suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 755 (Tex. 2003) (quoting *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex. 1993)). And when the totality of circumstantial evidence cumulatively "gives rise to any number of inferences, none more probable than another, [it] is legally insufficient to support an inference of a fact." *United Rentals N. Am., Inc. v. Evans*, 668 S.W.3d 627, 642 (Tex. 2023) (internal quotations omitted). Stated differently, a bunch of nothing is still nothing.

That is what have here.

Reyes provided just mere speculation, surmise, and suspicion of any arrangement, scheme, or agreement between Mukerji and Prestige or Fix My Car to solicit clients for Mukerji, or, that Prestige and/or Fix My Car acted on behalf of Mukerji to solicit Reyes as a client for Mukerji. *See Ford Motor*, 135 S.W.3d at 601. When we consider all of this circumstantial evidence together, in the light most favorable to Reyes, it gives rise, at best, to any number of inferences that are equally probable—none more probable than the other. This is equivalent to no evidence. *See United Rentals*, 668 S.W.3d at 642.

21

We thus conclude that Reyes failed to provide any legally sufficient evidence to support the challenged element of her claim for civil barratry. As a result, we hold the trial court properly granted no-evidence summary judgment on that claim.

## C. Civil Conspiracy

Reyes also contends the trial court erred in granting no-evidence summary judgment on her liability theory of civil conspiracy. Under Texas law, civil conspiracy is not an independent tort cause of action. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140–42 (Tex. 2019). Civil conspiracy is a theory of derivative liability based on an underlying tort. *Id*. at 141–42. "Because there can be no independent liability for civil conspiracy, a plaintiff does not have a viable conspiracy claim if the trial court correctly grants summary judgment on the underlying tort." *Gandy*, 634 S.W.3d at 241 (quoting *Spencer & Assocs., P.C. v. Harper*, 612 S.W.3d 338, 354 (Tex. App.—Houston [1st Dist.] 2019, no pet.)) (internal quotations omitted).

Here, Reyes's assertion of derivative liability for civil conspiracy is based on her claim for civil barratry. Because we have held that the trial court properly granted no-evidence summary judgment on Reyes's civil barratry claim, there is no

basis as a matter of law for Reyes's assertion of civil conspiracy.[8] *See Gandy*, 634

S.W.3d at 241; *Nguyen*, 605 S.W.3d at 793.

We overrule Reyes's third issue.[9]

## Conclusion

We therefore affirm the trial court's summary judgment in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Landau and Rivas-Molloy.

---

[8] The same is true for Reyes's derivative liability theory of respondeat superior. *See Walgreens v. McKenzie*, 676 S.W.3d 170, 180–81 (Tex. App.—Houston [14th Dist.] 2023, no pet.) ("The doctrine of respondeat superior is not an independent tort. . . . [I]t is connected to the underlying tort and survives or falls with it."); *see also Nguyen*, 605 S.W.3d at 793.

[9] Because we hold the no-evidence summary judgment was proper on Reyes's civil barratry and civil conspiracy claims, we need not address Reyes's challenge to the traditional summary judgment raised in her second issue. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also* TEX. R. APP. P. 47.1.